Judge Hitchcock
delivered the opinion of the court:
This case has been very fully and ably argued by the counsel, as well for the state as for the defendants. It is a case of importance, and presents several questions requiring the grave consideration of the court. These questions have been fully considered, and will now be noted, so far as is necessary for the disposition of the case.
Several objections are made to the information, the first of which is, that it is filed against the defendants by the name of the Gran-ville Alexandrian Society, without averring that said society is a corporate body.
The law under which this information is filed, authorizes proceedings of this kind against natural persons and against corporations.
Against natural persons:
“ 1. When any person shall usurp, intrude into, or unlawfully hold or exercise any public office, civil or military, or any franchise within this state, or any office in any corporation, created by the authority of this state.
“2. When any public officer, civil or military, shall havo done or suffered any act, which, by the provisions of this act, shall work a forfeiture of his office.
“3. When any association of persons shall act as a corporation, within this state, without being legally incorporated.”
Against any corporate body, when any such corporation shall have:
“ 1. Offended against any of the provisions of the acts creating, altering, amending, or renewing such corporation.
“ 2. Whenever it shall have forfeited its privileges and franchises by non-user.
“ 3. Whenever it shall have done or committed any acts which *8 amount to a surrender of its corporate rights, privileges, and franchises.
*“4. Whenever it shall have misused any franchise or privilege conferred, or exercise any franchise or privilege not conferred upon it by law.” Swan’s Stat. 770, 771.
The complaint in this case being, in fact, against a corporate body, for exercising a franchise not conferred upon it by law, it would have seemed to be more consistent with correct pleadings to have averred that the Granville Alexandrian Society was a body corporate, in law. There is not, perhaps, the same necessity of so doing in this state, where the private as well as the public acts of the legislature are printed in the statute book, and sent forth to the people, and where the court takes notice of them without pleading, as there would be in those states where a different course of practice prevails. But still, had there been no precedent to the contrary, we might have been inclined to the opinion, that, for this omission, this information was defective. But this information is framed after the precedent in the case of the People of New York v. Utica Insurance Company, 15 Johns. 381. It is like the information in the case of the State of Ohio v. Commercial Bank of Cincinnati, decided at the present term, and which was held to bo sufficient.
Another objection made to the information is,.that, although the venue, in the margin of the information, is laid in Licking county, yet it is nowhere stated that the principal office, or placo of business, of the defendants, was in that county.
We all concur in the opinion that it should appear that the .violation of the law complained of must havo taken place in the county where the information is filed, and that it is equally necessary that it should so appear upon the face of the information; as it would be that it should appear in an indictment, that the offense complained of had been committed in the county where the indictment is found. The jurisdiction of this court, upon quo warranto, is confined to the county where the defendants have their office, or place of business. It is so expressly declared with respect to natural persons, and the same reason applies with respect to corporations. As to the question, whether this place of business is sufficiently ^alleged in the information, we do not entirely concur. The information, after stating (without any venue) that the society had used the franchises of becoming pro *9 prietor of a bank, and of issuing notes, etc., concludes as follows: “And so the said prosecuting attorney, for the said State of Ohio, avers that the said Granville Alexandrian Society, during all of the time aforesaid, at Licking county aforesaid, bath, and still doth exercise, a franchise and privilege not conferred upon it by law, contrary to the form of the statute,” etc. Some of the members of tho court believe that this is sufficient, and that, although tho venue is not technically, it is substantially, laid. And, as this is rather a technical objection, we should be unwilling to dispose of tho case, upon this point, without further consideration.
Holding, for present purposes, that the information is sufficient, we will proceed to the examination of the further pleadings.
The defense relied upon in the first plea is, that by tho act of incorporation, banking powers wore conferred upon the Granville Alexandrian Society. If such be a fact, there is an end to the case.
This act of incorporation was passed on January 26, 1807.
It must be admitted, that the purposes for which this act was passed, do not appear in the act itself. It is very short, and expressed in general terms. But the title is, “an act for incorporating a library society in the town of Granville, in the county of Fairfield.” 5 Ohio Stat. 72. True, the title to an act does not constitute any part of the act, but it may be referred to, in order to explain what is doubtful in the act itself; And well may it be referred to in this case, whore, without the title, it would be impossible to conjecture what object tho legislature could have had in view. By reference to the title, we find the object to have been to incorporate a library association ; and, in giving a construction to the act, this must be borne in mind. Tho powers granted were intended to be such as were necessary to effect this object. It is not *reasonable to suppose that it was intended to grant any other. If, however, others have been granted, it is not in the power of this court to restrain them, although it is in tho power of the legislature to do it, for reasons which will be hereafter stated.
In section 1 of this act, it is enacted that certain individuals therein named, together with such others as shall be hereafter associated with them, shall be a body corporate, by the name of the “ Granville Alexandrian Society,” with tho usual powers of contracting and being contracted with, of suing and being sued, of making by-laws, ordinances, etc.; “ provided, said by-laws, ordi *10 nances, and regulations are not incompatible with the constitution and laws of the state ; subject, however, to such rules and regulations, as the legislature, from time to time, may think proper to make."
That part of the law relied upon as conferring tho banking power is section 2. It provides, “ that the corporation be, and they are hereby, made capable in law to hold any estate, real or personal, and the same to grant, sell, or dispose of; or to bind, by mortgage, or in such other manner as they shall deem most proper for the best interests of the corporation; provided, that the express purpose'of any gift or grant be answered.”
Before proceeding to a careful examination of the powers here granted, it may be well to recur to the argument of defendants’ counsel. It is not pretended, that, at this day, a grant of powers like these would confer the franchise of banking; but it is contended that, at the time this act of incorporation was passed, banking was not a franchise — there was no restraining law ; and any individual, or any corporation, authorized to contract and be 'contracted with ; to hold, sell, and dispose of property, without restriction, might engage in this business. The case of Attorney General v. Utica Ins. Co., 2 Johns. Ch. 377, is referred to as an authority. The remark of the chancellor, in that case, is : “ The right of banking was formerly a common law right, belonging to individuals, and to be exercised at their pleasure; but the legisla ture *thought proper, by the restraining act, to take away that right from all persons not specially authorized. Banking has now become a franchise.” He says nothing about corporations. It belongs to “individuals; ” but it does not follow that it belongs to corporations. Individuals have natural rights; corporations have not.`
Although there was no restraining law in this state, at the time this act of incorporation was passed ; and, although an individual might have engaged in this business, still, a corporation could not, unless the power was expressly granted; or, unless it was necessary, to carry into effect powers which were granted. The rule for construing acts of incorporation was the same then as now ; and that rule is, “ to consider corporations as having such powers as are specifically granted by the act of incorporation; or as are necessary for carrying into effect the powers expressly granted, and as not having any other.” 2 Kent’s Com. 298; 2 Cranch, 127; 4 Wheat. 636; 4 Pet 152; 8 Ohio, 286.
*11 Applying this rule of construction to the charter of the Gran-ville Alexandrian Society, and it seems to us clear that the privilege of banking is not granted. The corporation has power to contract and be contracted with; and this power it must have, for its accommodation as a library association. It is made “ capable in law to hold any estate, real or personal, and the same to sell, grant, or dispose of, or bind by mortgage, or in such other manner as they shall deem most proper for the best interest of the corporation ; provided, that the express purpose of any gift or grant be answered.” Here is no power of banking expressly granted. Is it necessary to carry into effect any of those powers which are granted ? Beyond the power of contracting and being contracted with, it has power to hold property, real and personal; and it may “grant, dispose of, or sell the same.” It is not necessary to exercise the power of banking in order to make contracts; or, in orde? to “grant, dispose of, or sell” property. Or it may bind such property by mortgage; or it may bind it “ in such other manner ” as it shall deem most proper for the best interests of the corporation. *If, at the time of the passage of this law, there was a mode of binding property, by exercising banking powers, as distinguished from binding by mortgage, well known and understood, then, possibly, by the grant of the power to bind property in such other manner, as the corporation might think proper, might be construed as granting, by implication, the power of banking. I can see nothing else in the law that would excite the least doubt whatever upon the subject.
But it is said by counsel, that in 1817, this court was called upon to give a construction upon this act of.incorporation; and that it was then holden, that it did confer banking powers; and we are referred to the case of the Granville Alexandrian Society v. John Van Buskirk. If our predecessors have, after full consideration, in fact determined the identical question now presented to us, we ought not lightly to overrule their decision. We have a manuscript report of that case, showing the pleadings, the facts, and the judgment'of the court. The reasons for that judgment are not assigned. It appears that the action was upon a promissory note, given by the defendant to one Samuel Davis, and by him indorsed to the plaintiffs, for 1250. The defense relied upon was, that the plaintiffs were a banking company, or association, that loaned money, and issued notes payable to bearer, contrary *12 to the act of 1816, prohibiting the issuing and circulation of unauthorized bank paper, which act declares all notes discounted by such companies void. It was admitted by the plaintiffs, that they did loan money, and issue, by their officers, notes or bills payable to bearer, and had done so from 1815 to the time of trial; and that the note was discounted by them for the defendant; and that he received, for the note, the bills of the plaintiffs. It is said in the manuscript, that the only question made and argued, was, whether the charter of the plaintiffs authorized them to do a banking business. The case was submitted to the court at the August term, 1817. Judges Brown and Couch being present, it was taken under advisement, and finally decided in Belmont county, Judges Pease and Couch holding the court. Judgment was rendered for the plaintiffs.
*The case seems to have been considered by three of the then judges of the court; whether they all concurred in the judgment finally rendered, we do not know. It was a decision made upon the circuit; for at that day there was no court in bank. Since the establishment of the court in bank, we have considered our own decisions, made upon the circuit, as of less authority than those made by a full court. In this decision, we have no evidence that more than two of the lour judges concurred. The presumption is, that there was a difference of opinion; otherwise, why was the case taken under advisement ? Taking all these circumstances into consideration, although the judgment of the court, in this case, would seem to have been predicated upon the supposition that the charter Of the Granville Alexandrian Society conferred upon that corporation banking powers, we can not look upon it as an authority to justify us in so holding, when we do not, in our consciences, believe that any such powers were intended to be, or were, in fact, granted. It may not be improper to say, that the defense set up in that case, although it might have been a legal, was a most unconscionable, one. It was one which the court could not but have looked upon with disgust. The defendant had received that from the plaintiffs which had been as good and valuable to him as so much money, and he now undertook to shelter himself from payment, under a highly penal statute. Whether this consideration had any influence with the court pronouncing the judgment, I can not say. From my knowledge of the men, I am sure they would strive against any such influence. But that *13 a strong desire to do strict justice between parties does sometimes lead courts away from strict law, there can be no doubt. It is a very common, and a very just remark, that hard eases frequently make bad precedents.
We are also referred to the opinion of Chancellor Kent, upon the extent of the powers granted by his charter. That opinion) however, is based, not upon the charter itself, but upon the decision of the court above referred to. The chancellor, if adjudicating this case, would probably hold that decision obligatory. We do not, for the reasons already stated.
*But even if we are wrong in supposing that the charter of this corporation did not confer upon it banking powers, we think it is within the laws restraining banking.
The first law of this kind was passed on February 8, 1815, and provides “that from and after the taking effect of this act it shall not be lawful for any individual, or company of individuals, to issue and put in circulation any note or order for the payment of money, struck or printed upon an engraved plate, and calculated to circulate as a bank bill or note, unless such individual shall be, by law, specially authorized so to do; or unless such company shall be incorporated by law for that purpose.” 2 Chase’s Stat. 868. There is no pretense that express power is conferred upon this society to do banking business; it is only by implication that it is claimed for it. This law, then, would be sufficient to restrict it in the exercise of this implied power; and it was passed before this power was exercised by this society.
The next restraining act is the act of January 27,1816, “to prohibit the issuing and circulating unauthorized bank paper. Swan’s Stat. 136. This act prohibits the exercise of banking powers, except by “ banks incorporated by a- law of this state.” It can hardly be pretended that the Granville Alexandrian Society is, within the meaning of this statute, “ a bank incorporated by a law of this state.” It, is a society incorporated as a library society, claiming the implied powers of banking, which it is prohibited from exercising by this law.
But it is said that if these restraining acts are construed to include this corporation, then so far they are unconstitutional, as taking away vested rights.
That the legislature, having granted powers to a private corporation can not, consistently with tho constitution, take away *14 those powers, without any default on the part of the corporation, is too well settled by any who regard the stability of the law, the authority of judicial decisions, or the safety of our institutions And even whore a corporation has violated its charter, it is rather a judicial than a legislative question whether such violation is a cause of forfeiture. *But the legislature may, and in most, if not in all cases, it is well that they should, in the acts of incorporation which they pass, retain the power of modifying, changing, and altering, as occasion may require. They have done it in the charter of the Granville Alexandrian Society. The corporation is created, and the powers granted, “subject, however, to such rules and regulations as the legislature, from time to time, may think proper to make.”
Can there be any doubt that, under this saving clause, the legislature would have had the power, on the day on which they passed these restraining laws, by a private act, to have said that this corporation should not exercise banking powers and privileges ? We think not. And if the corporation would have been bound to obey a private law of this character, it certainly should be bound to obey a general law intended to effect the same object.
It has boon argued by defendant’s counsel that there has been, so far, a recognition, by the supreme power of the state, of the power of this corporation to exercise the banking franchise, as, in fact, to confirm to it the right. There is force in the argument, and it would seem difficult to escape the conclusion that the authorities of the state have considered this as a banking institution. It has been so treated by the auditor of state and by the banking commissioners. It has paid a tax like the other banks, since this tax has boon appropriated by the legislature. The state, by its agents, have borrowed money of it to carry on its public works, and although, by the reservation in the charter, the legislature might, at anytime, have passed a law prohibiting it from issuing paper or exercising banking powers, it has done nothing of the kind, except what is contained in the general restraining law. The only act ever done by the general assembly, so far as we know, manifesting dissatisfaction at the course pursued by this corporation, was the adoption of the joint resolution directing the information in this case to be filed. Still, it seems to the court that these things can not properly be taken into consideration in deciding upon the validity of the first plea of the *15 *defendants. The simple question presented by that plea is, whether, by the act of incorporation, as originally passed, banking powers were vested in this corporation. We think they wore not, and we therefore hold that the pica is insufficient, and can not operate as a bar to the information.
This plea being disposed of, it becomes necessary to turn our attention to the third plea, to which there is also a demurrer.
This prosecution is in pursuance of the act of March 17,1838, entitled “ an act relating to informations in the nature of quo warranto, and regulating the mode of proceeding therein.” Swan’s Stat. 769.
In section 26 of this act, it is enacted, that “ nothing in this act contained shall authorize any proceeding against any corporation, for forfeiture of charter, unless the same shall be commenced within five years from the time of the exercise of the power, or the act of omission alleged as the cause of forfeiture; and no proceedings under this act shall be sustained against any corporation, on account of the exercise of any power or franchise under its charter, which shall have been used and exercised for the term of twenty years prior to the commencement of such proceedings; nor shall any proceeding be commenced under this act against any officer, to oust him or her from office, unless such proceeding shall be commenced within three years next after the cause of such ouster or right to hold such office shall have arisen; provided, that such proceedings under this act may be had, and the same shall not be'barred, in any of the above cases, if commenced within two years from the passage of this act.”
It will be seen that by this section three classes of cases are provided for. If the proceeding be against a corporation for the exercise of a power not granted, or for an act of omission, it must be commenced within five years from the exercise of the power, or of the omission to act. If it be for the exercise of a power or franchise, it must be within twenty years from the commencement of the exercise of the franchise. In other words, if this power or franchise has been exercised for the term of twenty years, tho right to exercise it can not be questioned *under this act. If the proceeding is against an officer, to oust him from office, it must be commenced within three years after the cause of such ouster shall have arisen.
But there is annexed a provision, that if the proceedings are *16 commenced within two years from the passage of the act, none of the above causes shall operate as a bar.
The third plea in the case, now under consideration, is framed, or intended to be framed, under this section of the statute.
It sots out that the defendants, “ on August 1, 1815, at the town of Granville aforesaid, established a bank, in the name and by authority of the corporation, and became the proprietors of a fund, for the purpose of issuing notes, receiving deposits, making discounts, and transacting all other banking business; and did then and there, in their corporate name and authority, issue notes, receive deposits, and make discounts, and use and transact all other banking business; and that from the said 1st day of August, hitherto, and for more than twenty years successively, next preceding March 17, 1838, have, from time to time, issued notes, received deposits, and made discounts, and transacted other banking business. And during all said term, without intermission, have kept up, by electing and swearing into office their directors and other officers, their organization as a bank, and upon all dividends by them declared, in their banking business, have paid the lawful tax to the State of Ohio as a banking corporation.”
It is objected to this plea, that the distinct facts set forth in this plea do not, separately considered, amount to evidence of the exercise of the franchise of banking. For instance, that the election and swearing into office of officers during a period of twenty years, is not such a user of a franchise as to confer a right. This is certainly correct, and if the plea contained nothing further, it would unquestionably be bad.
It is further objected, that having “from time to time, issued notes,” etc., is not such a user of the franchise of banking as to confer a right. This also is true, and if nothing beyond this had been stated in the plea, it would have been defective.
*The whole plea must be taken together, and if, taking the whole together, it shows that the defendants have, for the term of twenty years and more, used the franchise of banking, as that franchise is ordinarily used by banks, upon which it is expressly conferred, it is sufficient. This franchise is exercised, not by the performance of a single act, but of a variety of acts, which, taken together, constitute the business of banking.
The prosecuting attorney, however, complains that this plea is double, because it undertakes to set forth this variety of act. It *17 is not so. Several matters are stated, such as the discount of notes, the issue of notes, the election of officers, etc., but they all conduce to establish one proposition, the use of banking powers.
The question is, whether the plea does, in fact, set forth the use, by the defendants, of the banking franchise for twenty years, as that franchise is ordinarily exercised by banks.
It sets forth, that, during all the time stated in the plea, the corporation “have, without intermission, by election and swearing into office of their directors and other officers, kept up their organization as a bank.” This is in conformity with the practice and usage of banks. It further sets forth, that, from August 1, 1815, “hitherto, and for more than twenty years successively, next preceding March 17, 1838, they have, from time to time, issued notes, received deposits, and made discounts, and transacted other banking business.” This, too, we suppose to be in strict conformity to the usages of incorporated banks.
It seems, however, to be apprehended by the prosecuting attorney, that the expression “from time to time” implies that there has been a cessation of this user, and that it has not been continuous. The allegation of the plea is, “that for more than twenty years successively, next preceding,” etc., notes, etc., were “ from time to time” issued, etc.; not that it was done “from time to time” during a period of twenty years. No bank is perpetually, continually, daily engaged in receiving deposits,' making discounts, and issuing notes. All these things *are done “time to time,” at set times, or, as occasion may require.
From a most careful examination, we are brought to the conclusion that this plea is well pleaded, and that it is sufficient,, in law, to bar the prosecution.
It is claimed, however, that this information having been filed in pursuance of a joint resolution of the general assembly, that resolution operates as an extension of time within which an information maybe filed, so far as this corporation. Is concerned; and, further, that the commencement of this prosecution must be dated from the time an application was made to the court for leave to file an information. This application is said to have been made in September, 1839. So far as relates to this last position taken, it is sufficient to say that we are now; inquiring as.to the validity of a plea, and must be confined to the-record. In the record, there is nothing to show that application was ever made to this- *18 court for leave to file an information against the defendants. And if there were, it would be a strange inference to draw, that, because this court refused leave to file an information, therefore, an information was filed, and proceedings commenced.
As respects tho resolution of the general assembly, directing this information to be filed, it does not purport to interfere with, or change, tho quo warranto law. That law directs that an information may be filed by the prosecuting attorney, “upon leave granted by the supremo court, in term time, or, by any judge thereof, in vacation,” “ and- shall be so filed when the same shall b.e directed by the governor, the general assembly, or the supreme court.” When the information is filed, no matter whether it is done on leave granted, or by direction of the governor, general assembly, or supreme court, tho proceedings must be according to the law, and tho decision of the case must be according to the law. We can not look back to see whence the order for tho commencement of the proceedings emanated, and vary our decisions accordingly.
The court being unanimous in the opinion that the third plea is sufficient, it is unnecessary, at the present time, to go further into tho case.
*The prosecuting attorney can have leave to withdraw the .demurrer, and reply. If this is wished, the case will be continued, and remanded to the county. If not, then judgment will be .entered for the defendant.
£Note. — Upon the suggestion made by the court, the case was -continued, and remanded to the county of Licking, and leave ..given both parties to amend tho pleadings.]