Matthias, J.
The question presented by the record in this case is whether a board of education of a village district wherein no high school is maintained is required by law to pay the tuition of pupils who have completed the elementary school work of such district and are attending a high school in another district.
Although each board of education is required by law to establish a sufficient number of elementary schools to provide for the free education of the youth of school age within the school district, the provisions of the statute with reference to the establishment of high schools are not mandatory.
It is provided by Section 7663, General Code, that a board of education may establish one or more high schools, whenever it deems the same necessary for the convenience or progress of the pupils attending them, or for the conduct and welfare of the educational interests of the district. We think it must be conceded that there is no liability upon a village board of education for the payment of tuition for pupils resident of that district, but attending high schools elsewhere, unless the statutes of the state specifically place upon such board of education that obligation. It is contended that such duty and obligation is fixed and declared, by the *207 provisions of Sections 7748, 7750 and 7751, General Code. A cursory reading of these provisions induces the conclusion contended for, the language being in broad and general terms.
Section 7750, General Code, provides that a board of education not having a high school may enter into an agreement with another board of education which does maintain a high school for the schooling of the high-school pupils of the former, and then, when such an agreement is made, the board making it shall be exempt from the payment of tuition at other high schools of pupils who live within three miles of the school designated in the agreement, if the school or schools selected by the board are located in the same civil township, as that of the board making it, or some adjoining township. That section provides further that in case no such agreement is entered into, the pupil holding a diploma may select the school to be attended, and shall give notice thereof in writing to the clerk of the board of education.
Section 7751 provides that “Such tuition shall be paid from either the tuition or contingent funds.”
Before we can be justified, however, in applying the provisions of these sections to all schools’, and to all boards of education, we must examine the history of these sections and thereby ascertain their correct meaning and proper application.
Section 7750 was formerly a portion of Section 4029-3, Revised Statutes, which was a part of what was formerly known as the Boxwell law, under authority of which pupils of subdistricts and special *208 districts were admitted to examinations, and diplomas issued to those who were successful. Under the provisions of that act boards of education of the special or township district, in which any pupil receiving a diploma resided, were authorized to pay the tuition of such pupils who thereafter attended any village or city high school in the county. Subsequently these provisions were so amended as to permit attendance in an adjoining county, and later so amended as to make the payment of tuition mandatory. In 1902 the terms of this statute were so extended as to admit to the examination “pupils of township, special and joint subdistricts,” and to entitle those receiving diplomas to enter any high school in the state. However, tuition was required to be paid only by boards of education of districts which maintained no high school. In 1909 an amendment was made, the effect of which was to require boards of education which maintained a high school with only limited courses to pay tuition to a high school of a higher grade, for the period named, to supplement the work of the local high school. In 1910 the codifying commission subdivided Section 4029-1, Revised Statutes, making therefrom Sections 7740 to 7744, General Code, and subdivided Section 4029-3, Revised Statutes, making therefrom Sections 7747 to 7751, General Code.
No change whatever was made in the substance, meaning or application of these provisions at that time except to eliminate joint subdistricts, and that undoubtedly was done because of the fact that in 1904 joint subdistricts had been abolished.
*209 A comparison of thé codification of 1910 with the former sections of the Revised Statutes discloses no change of language which would in anywise affect the operation of any of the provisions to which we have heretofore referred, and it is quite obvious that village boards of education were not affected in any wise by the provisions of any of these sections, either before or after the codification.
A dissection of the original sections, making several sections of each for the purpose of convenience merely, does not effect any change in the substance or operative effect thereof, and, under the well-known and frequently-applied rule, does not alter the meaning of the language used.
The presumption is that although the language has been changed in the revision or codification of the statute it has the same meaning and application as before the revision or codification, and the court is warranted in changing the construction thereof only when that is plainly required in order to conform to the manifest intent of the legislature. Ash v. Ash et al., 9 Ohio St., 383, 387; State, ex rel. Clough & Co., v. Commissioners, 36 Ohio St., 326; Heck v. State, 44 Ohio St., 536; State, ex rel. Baumgardner, v. Stockley, 45 Ohio St., 304, 308; Conger et al. v. Barker’s Admr., 11 Ohio St., 1; German American Ins. Co. v. McBee et al., 85 Ohio St., 173, and Myers, Treas., v. Rose Institute, 92 Ohio St., 238, 247.
“A board of education” meant just the same after as it did before the action of the codifying *210 commission. Village boards of education were entirely outside the scope of those statutes before the codification, and there was no change which could possibly serve to include them.
Section 7740 was amended April 13, 1910, extending the privilege of taking the examination to pupils of village districts as well as to those of township and special districts. However, there was no change in the provisions relative to the payment of tuition. The question thereupon arises whether this amendment, which affords to the pupils of village districts the privilege to take such examination, serves to impose upon the board of education of such district the obligation to pay tuition for any such pupils passing the examination who thereafter attend high school in some other district. It is to be borne in mind that the right and privilege of pupils to attend high school in districts other than those wherein they reside was conferred long prior to the passage of any law requiring boards of education to pay tuition for such attendance. It is therefore manifest that the right to take the examination, and, if successful, the privilege of attending a high school in another district, did not imply any obligation whatever upon the local board of education to pay tuition. The right of the pupil to attend a high school elsewhere and the obligation of the board to pay tuition have,at all times been treated in legislation as two entirely separate and distinct matters, the privilege of the pupil being broader than the obligation of the board. .
*211 It is to be observed that very shortly after the last amendment to which we have above referred, the legislature, on May 10, 1910, amended Section 7748 so as to extend the rights and privileges of a Boxwell-Patterson graduate to a pupil living in a village or city district who had there completed the elementary school course and thereafter transferred his residence to a township or special district. The fact seems significant that the legislature, by the terms of this amendment, limited the tuition privilege to a village pupil who had become a resident of a township or special district, and did not extend the same privilege to the pupil who continued a resident of the village district after completing the elefnentary course.
In 1914 the sections of the code which incorporate the provisions for examination were repealed. At that time, also, Section 7747 was amended so as to read as follows:
“The tuition of pupils who are eligible for admission to high school and who reside in rural: districts, in which no high school is maintained, shall be paid by the board of education of the school district in which they have legal school residence, such tuition to be computed by the month. An attendance any part of the month shall create a liability for the entire month. No more shall be charged per capita than the amount ascertained by dividing the total expenses of conducting the high school of the district attended, exclusive of permanent improvements and repair, by the average monthly enrollment in the high school of the district. The district superintendent shall certify to the county su *212 perintendent each year the names of all pupils in his supervision district who have completed the elementary school work, and are eligible for admission to high school. The county superintendent shall thereupon issue to each pupil so certified a certificate of promotion which shall éntitle the holder to admission to any high school. Such certificates shall be furnished by the superintendent of public instruction.”
Under the provisions of the above section, while all pupils of any school in the county under the supervision of the county superintendent, who had completed the elementary school work, were entitled to receive certificates of promotion and permitted to attend any high school in the state, yet local boards of education, by the terms of this statute, were required to pay the tuition only of pupils “who reside in rural districts, in which no high school is maintained.”
It is too plain to require discussion that the provisions of Section 7747, General Code, must be limited in their application to rural districts. That limitation is made by the express terms of that section, and we have seen that under proper construction of Sections 7750 and 7751 the provisions thereof do not include village boards of education.
It is to be observed that the manner of ascertaining the rate of tuition to be charged for rural pupils is definitely prescribed by Section 7747. If we assume that Sections 7750 and 7751 place upon village boards of education the obligation to pay tuition we cannot look to the provisions of Section 7747 to ascertain the rate of tuition to be charged, *213 for clearly the provisions of that section, relative to the rate of tuition which may be charged and the manner of its ascertainment, have reference only to “the tuition of pupils who are eligible for admission to high school and who reside in rural districts, in which no high school is maintained.” Neither Section 7750 nor any other section of the statute prescribes any method of determining the amount of tuition to be paid by village districts. The provisions of Section 7682, General Code, would therefore govern, which authorize boards of education to admit pupils not residents of the district “upon such terms or upon the payment of such tuition as it prescribes.”
It follows that if village boards of education are required to pay tuition they must meet the terms prescribed by the board of education of the district maintaining the high school attended, while the board of education of the rural district is required to pay only the tuition determined and computed in the manner prescribed by Section 7747, General Code, although pupils from the village district and the rural district may be in attendance upon the same high school.
From these considerations it seems quite clear that the legislators, in drafting and enacting the various statutes to which we have referred, either designedly or inadvertently failed to impose upon boards of education of village districts maintaining no high school the obligation to pay tuition for the pupils of that district attending a high school elsewhere. It is well argued that there is no good reason why that should have been done. We are un *214 able now to assign any reason for not extending the same privilege to a pupil resident of a village district not having a high school that is accorded the pupil under similar circumstances in a rural district; nor any reason why the same obligation should not rest upon the village school district not maintaining a high school to pay the tuition of its pupils who have completed the elementary school course as is imposed by the plain terms of the statute upon the rural districts. It has been suggested that this apparently unfair discrimination may have ■escaped the attention of those charged with the duty of preparing recent amendments to our school laws, because of the fact that there are but few village districts in the state which do not maintain a high school. A slight change of phraseology would have removed the unfairness and inequality. The condition of the provisions we have been considering serves to illustrate the usual results of the scissors-and-paste method of legislation too frequently employed. Whatever the cause of the present condition of the statute, if a correction is to be made it should not be accomplished by a forced construction of the provisions of the school code by the courts. That is purely a matter of legislation, and is solely within the province of the legislature. Any district which is required to pay the tuition of a pupil residing therein, but attending school in another district, is entitled to the benefits of the provisions of Section 7683, General Code, and should be credited with the amount of school taxes paid upon property owned by the pupil or his parent in the district wherein is located the high school attended. Such *215 credit should be made no matter who pays the tuition. But for the reasons above stated the board of education of the village of East View is not required to pay any of the tuition sought to be charged against it, and the record discloses that the relator has not met the requirements of the board of education of the school district of the city of Cleveland with reference to the payment of tuition. The demurrer to the petition is therefore sustained and the prayer for a writ of mandamus is denied.

Demurrer sustained and writ refused.

Nichols, C. J., Wanamaker, Newman, Jones, Johnson and Donahue, JJ., concur.