The Attorney General has received your opinion request which asks, in effect: Where the charter of a home-rule city provides that all city council meetings shall be open to the public, may the council nevertheless go into executive session as allowed by the State Open Meeting Act, or could this action be taken only upon amendment of the charter? Any city of 2,000 people may "frame a charter for its own government," a charter which, along with municipal ordinances, constitutes the "organic law" of these home-rule cities. Okla. Const., Article XVIII, Section 3(a); 11 O.S. 13-101 [11-13-101] (1977); City of Ponca City v. Edwards, Okl., 460 P.2d 418 (1969). When a municipal enactment conflicts with a state statute on the same subject, the municipal enactment controls over matters of purely local concern while the statute controls over matters of state-wide concern. 11 O.S. 13-109 [11-13-109] (1977); Moore Funeral Homes, Inc. v. City of Tulsa, Okl., 552 P.2d 701
(1976); City of Pryor Creek v. Public Service Company of Oklahoma, Okl., 536 P.2d 343 (1972). No conflict exists, however, unless the municipal enactment and the state statute "both . . . contain either express or implied conditions which are inconsistent and irreconcilable with one another." Moore v. City of Tulsa, Okl., 561 P.2d 961 (1977). If the difference is reconcilable, the two are considered "cumulative and concurrent." Lee v. Norick, Okl., 447 P.2d 1015 (1968); Dillon v. City of Tulsa, Okl.Cr., 273 P.2d 145 (1954). As stated in Ex parte Johnson, 20 Okl.Cr. 66, 201 P. 533
(1921), "a municipality may move in the same direction as the Legislature, but not contrary to nor in an opposite direction." In other words, as long as it does not run afoul of statutory or constitutional law, a home-rule community may afford its citizens more protection than the minimum required by state statute, even in matters of state-wide concern. Vantine v. City of Tulsa, Okl.Cr.,518 P.2d 316 (1973); Beatrice Foods Company v. City of Okmulgee, Okl., 381 P.2d 863 (1963). Applying these rules to the present question, we find that although a city charter provision requiring all council meetings to be open to the public differs from the State Open Meeting Act, which permits executive sessions for discussion of certain personnel matters, the two are not in "irreconcilable conflict." In enacting the Open Meeting law, the Legislature prescribed a minimum degree of openness for covered meetings. Title 25 O.S. 307 [25-307] (1977) allows, then strictly limits, executive sessions. It does not mandate them. By providing this option, the Legislature did not foreclose public bodies such as city councils from openly conducting meetings involving personnel matters. Accordingly, a city charter may require a higher degree of openness than the minimum dictated by the State Open Meeting Act. In the words of the Court in Ex parte Johnson, supra, the framers of the city charter and the state legislature have "moved in the same direction" — the direction of open government. The city has simply moved one step further. The city council cannot circumvent the wishes of the citizens who voted to adopt the charter, merely because that charter is slightly more stringent than state law. Unless the citizens vote to amend the charter under the procedures outlined in 11 O.S. 13-111 [11-13-111] (1977), the city council must honor the charter provision by conducting, not only its usual meetings, but also its discussion of personnel matters, in the open. It is, therefore, the official opinion of the Attorney General that where the charter of a home-rule city provides that all city council meetings shall be open to the public, the council may not go into executive session under 25 O.S. 307 [25-307] (1977) of the State Open Meeting Act, unless the city charter is amended to allow such sessions. (Mary Bryce Leader)