** PART II **
QUESTION 2
IS IT A VIOLATION OF THE NEPOTISM LAWS IF THE GOVERNING BOARD OF REGENTS, WHICH HAS THE AUTHORITY TO EMPLOY AND SET SALARY AMOUNT, APPOINTS A PERSON RELATED WITHIN THE THIRD DEGREE OF CONSANGUINITY OR AFFINITY TO THE PRESIDENT OF AN INSTITUTION GOVERNED BY THAT BOARD? (NEPOTISM)
THE ANSWER TO QUESTION NUMBER 2 IS IN THE NEGATIVE. THE EMPLOYMENT OF THE EXECUTIVE OFFICER'S INELIGIBLE RELATIVE BY THE GOVERNING BOARD IS NOT A PER SE VIOLATION OF THE NEPOTISM LAWS BECAUSE THE APPOINTEE IS NOT A RELATIVE OF THE GOVERNING BOARD WHICH IS THE HIRING AUTHORITY.
THE PROHIBITION OF 21 O.S. 484 EXTENDS ONLY TO THE APPOINTMENT OF AN ELECTED OFFICIAL'S INELIGIBLE RELATIVE WITHIN THE SAME AGENCY. THE STATUTE DOES NOT PRECLUDE THE BOARD FROM HIRING A SUBORDINATE OFFICER'S (PRESIDENT'S) RELATIVE TO A POSITION WITHIN THE SAME AGENCY.
SIMILARLY, THE PROHIBITION OF 21 O.S. 481 DOES NOT APPLY BECAUSE IN THIS CASE THE PRESIDENT OR THE CHIEF EXECUTIVE OFFICER IS NOT THE APPOINTING AUTHORITY. THE PURPOSE OF THE ANTI-NEPOTISM LAWS IS TO PREVENT THE FILLING OF OFFICES AND SUBORDINATE POSITIONS WITH RELATIVES OF THE PERSON MAKING THE APPOINTMENT.
THIS OPINION IS CONSISTENT WITH THE ATTORNEY GENERAL OPIN. NO. 81-248. IN THAT OPINION THE ATTORNEY GENERAL HELD THAT A GOVERNING BODY COULD APPOINT THE SPOUSE OF A POLICE OFFICER AS AN INTERIM POLICE CHIEF BECAUSE THE APPOINTEE WAS NOT A RELATIVE OF THE APPOINTING AUTHORITY, THE BOARD.
QUESTION 3
IS IT A VIOLATION OF THE NEPOTISM LAWS IF THE GOVERNING BOARD OF THE INSTITUTION VOTED TO CONFIRM THE APPOINTMENT OF AN INELIGIBLE RELATIVE OF THE PRESIDENT OF AN INSTITUTION GOVERNED BY THE BOARD?
THE NEPOTISM STATUTES PROHIBIT AN OFFICER OR AN ELECTED MEMBER FROM APPOINTING OR VOTING TO APPOINT HIS INELIGIBLE RELATIVE TO A SUBORDINATE OFFICE. 21 O.S. 481/21 O.S. 484. THESE STATUTES DO NOT EXPRESSLY ADDRESS THE SITUATION REFERRED TO IN YOUR QUESTION, WHICH IMPLIES THAT WHILE THE "APPOINTING AUTHORITY" IS THE BOARD, IT IS THE INSTITUTIONAL PRESIDENT WHO HAS A KEY ROLE IN THE SELECTION PROCESS.
NEPOTISM STATUTES ARE PENAL. 4 AS A GENERAL RULE OF CONSTRUCTION, PENAL STATUTES ARE STRICTLY CONSTRUED AGAINST THE STATE AND IN FAVOR OF THE ACCUSED. 5 THE EXPRESS LANGUAGE OF THE STATUTES DOES NOT PROHIBIT THE HIRING AUTHORITY, SUCH AS A BOARD, FROM APPOINTING OR VOTING FOR THE APPOINTMENT OF A RELATIVE OF ANOTHER EXECUTIVE OFFICER. SECTION 481 ONLY PROHIBITS THE APPOINTING OFFICER, (SUCH AS A CHIEF EXECUTIVE OFFICER OF AN INSTITUTION) FROM EMPLOYING HIS OR HER OWN INELIGIBLE RELATIVE IN THE SAME DEPARTMENT WHEN PUBLIC FUNDS ARE USED FOR COMPENSATION. SECTION 484 PROHIBITS AN ELECTED OFFICIAL FROM APPOINTING AN INELIGIBLE RELATIVE TO THE SAME AGENCY. THIS IS IN ACCORD WITH THE CURRENT ATTORNEY GENERAL OPINIONS.
THE ANALYSIS IS SIGNIFICANT BECAUSE THE NEPOTISM STATUTES, EXCEPT 484 HAVE NOT UNDERGONE ANY REAL AMENDMENTS SINCE THEIR ENACTMENT IN 1910 IN SPITE OF VARIOUS AND CONFLICTING OPINIONS OF THE ATTORNEY GENERALS. A LONG STANDING RULE OF STATUTORY CONSTRUCTION IS THAT AFTER A TIME, LEGISLATIVE SILENCE MAY BE CONSTRUED AS ACQUIESCENCE OR APPROVAL OF THE INTERPRETATION PLACED UPON THE PROVISIONS OF A STATUTE BY AN ATTORNEY GENERAL. IN THIS INSTANCE THE LEGISLATURE HAS NOT AMENDED THE ANTI-NEPOTISM LAWS TO OVERRULE THE ATTORNEY GENERALS' STRICT STATUTORY INTERPRETATION.
SINCE THE PRESIDENT'S RELATIVE IS NOT A RELATIVE OF THE GOVERNING BOARD, THE BOARD MAY LEGALLY APPOINT SUCH A PERSON TO A POSITION WITHIN THE SAME INSTITUTION AS THE PRESIDENT.
WHILE THIS INTERPRETATION REFLECTS THE CURRENT TREND OF ATTORNEY GENERAL OPINIONS, I WOULD CAUTION THAT THIS INTERPRETATION IS SUBJECT TO CHALLENGE UNLESS AFFIRMED BY A COURT OF COMPETENT JURISDICTION. IT COULD BE ARGUED TO THE CONTRARY THAT THIS INTERPRETATION VIOLATES THE PURPOSE OF THE ANTI-NEPOTISM STATUTES WHICH IS TO PREVENT THE FILLING OF OFFICES AND SUBORDINATE POSITIONS WITH RELATIVES OF THE PERSON MAKING THE APPOINTMENT. SEE REDDELL V. STATE. SUPRA. IN THAT CASE THE COURT OF CRIMINAL APPEALS SAID THAT:
 (I)T IS WITHIN THE KNOWLEDGE OF THE MEMBERS OF THIS COURT THAT, PRIOR TO THE ADOPTION OF ANTI-NEPOTISM STATUTES IN THIS COUNTRY, A PRACTICE HAD ARISEN WHEREIN IT WAS THE CUSTOM OF ELECTED OFFICIALS TO APPOINT THEIR RELATIVES TO SUBORDINATE POSITIONS IN EMPLOYMENT IN THEIR DEPARTMENTS OF STATE AND MUNICIPAL GOVERNMENT. IT WAS THIS PRACTICE THAT LED UNDOUBTEDLY TO THE ADOPTION OF SUCH STATUTES, AND THIS IS THE PRACTICE WE THINK IT WAS CLEARLY INTENDED TO ABOLISH."
USING THIS REASONING THE PROPONENT COULD REASONABLY ARGUE THAT THE PURPOSE OF THE PROHIBITION IS FRUSTRATED WHEN A GOVERNING BOARD SUMMARILY RATIFIES ITS INSTITUTION'S PRESIDENT'S SELECTION OF HIS INELIGIBLE RELATIVE, WHEN THE RELATIVE WAS NOMINATED BY THE PRESIDENT AND THE PRESIDENT WAS DELEGATED THE RESPONSIBILITY OF SELECTING CANDIDATES FOR THE SUBORDINATE POSITIONS.
THIS ARGUMENT MAY HAVE SOME MERIT ESPECIALLY IN VIEW OF SOME OLD ATTORNEY GENERAL OPINIONS THAT INTERPRETED THE HIRING AUTHORITY TO BE THE PERSON WHO HAS THE EXCLUSIVE CONTROL OVER SELECTION OF EMPLOYEES. THIS CRITERION WAS USED IN THE OPINIONS TO DETERMINE IF A BOARD HAD THE ACTUAL HIRING POWER. THE OPINIONS REASON THAT AN OFFICER OR BOARD HAVING STATUTORY DUTY TO CONFIRM APPOINTMENTS MADE BY ANOTHER OFFICER OR ANOTHER BOARD DOES NOT HAVE THE ACTUAL HIRING POWER. ONLY THE OFFICER OR BOARD HAVING HIRING POWER, OR EXCLUSIVE CONTROL OVER SELECTION OF EMPLOYEES, IS PROHIBITED BY 21 O.S. 481 FROM EMPLOYING RELATIVES WITHIN THE THIRD DEGREE. THESE OPINIONS DIFFER FROM THE CURRENT OPINIONS WHICH MAKE A NARROW CONSTRUCTION BASED ON A LITERAL READING OF THE STATUTE. THESE OPINIONS ARE ALSO IN ACCORD WITH THE COURT'S NARROW READING OF PENAL STATUTES.;
THE CHANCE OF A SUCCESSFUL APPEAL IS POOR IN THE OPINION OF THIS WRITER BECAUSE THE ANTI-NEPOTISM STATUTES ARE PENAL STATUTES AND THE COURTS ARE BOUND TO GIVE THEM LITERAL CONSTRUCTION IN FAVOR OF THE ACCUSED AND AGAINST THE STATE. INSTEAD OF RUNNING THE RISK OF AN UNFAVORABLE RULING I WOULD ADVISE THAT YOU CONSIDER SEVERAL ALTERNATIVES IF SUCH EMPLOYMENT PRACTICES ARE OF CONCERN TO YOU AND TO THE STATE REGENTS.
THE STATE REGENTS MAY REQUEST THE LEGISLATURE TO INITIATE BROADER LEGISLATION PERTAINING ONLY TO THE STATE SYSTEM OF HIGHER EDUCATION AND TO THE INSTITUTIONS WITHIN THE SYSTEM. IN FACT SIMILAR LEGISLATION WAS ADOPTED WITH REGARD TO MUNICIPALITIES. SEE 11 O.S. 8-106. THIS ANTI-NEPOTISM LAW IS MUCH BROADER THAN 21 O.S. 481-484. A SIMILAR STATUTE WOULD PROHIBIT A BOARD OF REGENTS FROM APPOINTING THE RELATIVE OF THE CHIEF EXECUTIVE OFFICER FOR A POSITION WITHIN THE SAME INSTITUTION. ATTORNEY GENERAL OPIN. NO. 83-176.
IN ATTORNEY GENERAL OPIN. NO. 83-176 THE ISSUE WAS: MAY A CITY COUNCILMAN FROM A NON-CHARTERED MUNICIPALITY LEGALLY APPOINT HIS SON TO THE MUNICIPAL COMMISSION IF THE COMMISSION MEMBERS SERVE WITHOUT PAY AND IF THE COMMISSION'S POLICY DECISIONS WERE SUBJECT TO THE APPROVAL OF THE CITY'S GOVERNING BOARD OF TRUSTEES. THE OPINION HELD THAT SUCH AN APPOINTMENT WOULD NOT VIOLATE SECTION 481 BECAUSE PUBLIC FUNDS WOULD NOT BE USED TO COMPENSATE THE RELATIVE. BUT SUCH AN APPOINTMENT WOULD BE A VIOLATION OF THE ANTI-NEPOTISM LAW OF 11 O.S. 8-106 APPLICABLE TO MUNICIPALITIES. SECTION 8-106 IS MORE RESTRICTIVE THAN 481 BECAUSE IT PROHIBITS ANY MUNICIPAL OFFICER FROM APPOINTING SOMEONE RELATED TO HIM OR TO ANY GOVERNING BODY MEMBER WITHIN THE THIRD DEGREE. AS AN ADDITIONAL GROUND THE OPINION EMPHASIZED THE PURPOSE OF ANTI-NEPOTISM STATUTE AS STATED IN REDDELL.
THE STATE REGENTS MAY ALSO CHOOSE TO ADOPT A MORE STRINGENT ANTI NEPOTISM POLICY FOR THEIR INTERNAL OPERATION. THE GOVERNING BOARDS MAY SIMILARLY ADOPT STRINGENT RULES TO PREVENT THE PRACTICES YOU HAVE RAISED. A UNIFORM SET OF ANTI-NEPOTISM RULES APPLICABLE TO THE STATE SYSTEM WOULD BE USEFUL IF SUCH RULE-MAKING WOULD NOT VIOLATE THE PROHIBITION OF 70 O.S. 3203 (1981).
QUESTION 4
WOULD HIRING OF THE INDIVIDUAL MENTIONED IN QUESTION 3 BE LAWFUL IF THE BOARD FOR THAT INSTITUTION VOTED ON THE RECOMMENDATION MADE BY A SEARCH COMMITTEE OF THAT INSTITUTION?
THE RESPONSE TO YOUR FOURTH QUESTION IS NO, IT IS NOT A VIOLATION OF 481 ET SEQ. FOR THE GOVERNING BOARD TO CONFIRM THE APPOINTMENT OF A PERSON RELATED TO THE PRESIDENT BY MARRIAGE OR BLOOD WITHIN THE THIRD DEGREE WHEN SUCH APPOINTMENT WAS MADE AT THE RECOMMENDATION OF A SELECTION COMMITTEE. THE PURPOSE OF THE NEPOTISM LAWS IS NOT FRUSTRATED BECAUSE, ONCE AGAIN THE HIRING AUTHORITY IS NOT APPOINTING HIS OR HER INELIGIBLE RELATIVE.
(YASODHARA M. MOHANTY)
(81-248)