THE ATTORNEY GENERAL HAS RECEIVED YOUR LETTER ASKING FOR AN OFFICIAL OPINION ADDRESSING, IN EFFECT, THE FOLLOWING QUESTIONS:
 1. WHETHER IT IS PROPER FOR THE FATHER-IN-LAW OF THE MAYOR OF MOUNTAIN VIEW, OKLAHOMA, TO BE APPOINTED TO THE PUBLIC HOUSING AUTHORITY BOARD, EVEN THOUGH THE MAYOR DID NOT PARTICIPATE IN VOTING FOR THE APPOINTMENT?
 2. WHETHER THERE IS A CONFLICT OF INTEREST FOR A MEMBER OF THE TOWN BOARD OF TRUSTEES TO OWN THE ONLY NEWSPAPER IN TOWN WHERE LEGAL PUBLICATIONS AND OTHER ADS ARE PUBLISHED AND ALSO, THE BOARD PURCHASES OFFICE SUPPLIES FROM THE TRUSTEE?
 3. WHEN THERE IS AN ELECTION OF THE TOWN BOARD OF TRUSTEES AND NEW MEMBERS WERE ELECTED BUT BEFORE THE NEW BOARD TAKES THEIR OFFICE THERE IS A RESIGNATION OF ONE OF THE MEMBERS, MAY THE OLD BOARD FILL THE VACANCY?
BECAUSE YOUR QUESTIONS MAY BE ANSWERED BY REFERENCE TO CLEARLY CONTROLLING STATUTES AND PRIOR ATTORNEY GENERAL OPINIONS, THE ISSUANCE OF AN OFFICIAL OPINION OF THE ATTORNEY GENERAL IS NEITHER DESIRABLE NOR NECESSARY. THE DISCUSSION WHICH FOLLOWS IS THEREFORE, RATHER, THE ANALYSIS AND CONCLUSIONS OF THE UNDERSIGNED ASSISTANT ATTORNEY GENERAL.
THIS IS NOT AN OFFICIAL OPINION OF THE ATTORNEY GENERAL.
FURTHERMORE, YOUR ISSUES INVOLVED DETAILED FACTUAL QUESTIONS AND IT HAS BEEN THE LONG STANDING POLICY OF THIS OFFICE THAT WE ARE UNABLE TO ANSWER DIRECTLY FACTUAL QUESTIONS. IT IS ESPECIALLY INAPPROPRIATE FOR OUR OFFICE TO RULE ON AN ACTUAL CONTROVERSY. HOWEVER, I AM ABLE TO SET FORTH PARAMETERS AND APPLICABLE LAW FOR YOU TO CONSIDER WITH REGARD TO THESE QUESTIONS.
OKLAHOMA STATUTES PROHIBIT CERTAIN EMPLOYMENT PRACTICES WHICH FALL UNDER THE RUBRIC OF NEPOTISM. YOUR QUESTION SPECIFICALLY INVOLVES MUNICIPAL EMPLOYMENT AND NOT STATE EMPLOYMENT. THE KEY STATUTE APPLICABLE HERE IS 11 O.S. 8-106 (1990) WHICH STATES IN PERTINENT PART:
 "NO ELECTED OR APPOINTED OFFICIAL OR OTHER AUTHORITY OF THE MUNICIPAL GOVERNMENT SHALL APPOINT OR ELECT ANY PERSON RELATED BY AFFINITY OR CONSANGUINITY WITHIN THE THIRD DEGREE TO ANY GOVERNING BODY MEMBER OR TO HIMSELF . . ."
 THE CRIMINAL STATUTE ON NEPOTISM IS FOUND AT 21 O.S. 481, WHICH STATES IN PERTINENT PART:
 "IT SHALL BE UNLAWFUL FOR ANY EXECUTIVE, LEGISLATIVE, MINISTERIAL OR JUDICIAL OFFICER TO APPOINT OR VOTE FOR THE APPOINTMENT OF ANY PERSON RELATED TO HIM BY AFFINITY OR CONSANGUINITY WITHIN THE THIRD DEGREE, TO ANY CLERKSHIP, OFFICE, POSITION, EMPLOYMENT OR DUTY IN ANY DEPARTMENT OF THE STATE, DISTRICT, COUNTY, CITY OR MUNICIPAL GOVERNMENT OF WHICH SUCH EXECUTIVE, LEGISLATIVE, MINISTERIAL OR JUDICIAL OFFICER IS A MEMBER, WHEN THE SALARY, WAGES, PAY OR COMPENSATION OF SUCH APPOINTEE IS TO BE PAID OUT OF THE PUBLIC FUNDS OR FEES OF SUCH OFFICE. . . ."
ATTORNEY GENERAL OPINION 90-025, WHICH WAS ADDRESSED TO YOU, DISCUSSED WHAT WAS AN APPOINTMENT. THE OPINION LOOKED AT THE ORDINARY DEFINITION OF APPOINTMENT TO CONCLUDE THAT AN "APPOINTMENT IS THE N . . . DESIGNATION OF A PERSON TO HOLD A NONELECTIVE OFFICE OR PERFORM A FUNCTION. UNDER THIS DEFINITION, THE OPINION CONCLUDED THAT A VIOLATION WOULD OCCUR WHERE A COUNTY COMMISSIONER DESIGNATED OR VOTED TO DESIGNATE A PERSON PROHIBITED BY 481 TO A COUNTY POSITION.
THE OPINION CONTINUED TO ADDRESS THE FACT THAT A PERSON VIOLATES 481 WHEN THE PERSON IS AN OFFICER UNDER THE STATUE AND WHEN THE PERSON APPOINTS OR VOTES FOR THE APPOINTMENT OF SOMEONE WHO IS INELIGIBLE UNDER THE STATUTE. THEREFORE, AS THE OPINION STATED,
"THERE IS NO MENTION IN THE STATUTE FOR LIABILITY FOR AN OFFICER WHO FAILS TO VOTE SO LONG AS THE OTHER VOTING OFFICERS ARE NOT RELATED TO THE PROPOSED APPOINTEE. IT WAS CONCLUDED IN THE OPINION THAT THE PROHIBITIONS OF 481 DID NOT EXTEND TO THE PROPOSED APPOINTEE, AND SUCH PROHIBITION SHOULD NOT BE READ INTO THE ACT. HOWEVER, IT IS IMPORTANT TO NOTE THAT THE OPINION CAUTIONED THAT IT DID NOT DISCUSS POSSIBLE SANCTIONS FOR NONFEASANCE OR OMISSIONS OF DUTIES UPON A BOARD MEMBER WHO WILLFULLY FAILS TO VOTE IN SUCH ACTION OF THE BOARD. 22 O.S. 11181.1."
FURTHERMORE, WE DO NOT IN ANY WAY CONDONE THE ACTION OF A VOTING MEMBER FROM REFRAINING TO VOTE FOR AN INELIGIBLE PERSON FOR THE PURPOSE OF AVOIDING THE PROHIBITIONS OF THE NEPOTISM STATUTES. THE SPIRIT OF THE NEPOTISM STATUTES IS TO PROHIBIT THE APPOINTMENT OF AN INELIGIBLE PERSON FROM A CERTAIN POSITION. THE SPIRIT AND INTENT OF CRIMINAL STATUTES SHOULD BE UPHELD EVEN IF THEY ARE NOT DIRECTLY VIOLATED.
YOUR FIRST ISSUE INVOLVES AN ISSUE OF FACT WHICH IT IS THE POLICY AND PRACTICE OF THIS OFFICE NOT TO ANSWER HOWEVER, THE ABOVE COMMENTS HOPEFULLY WILL BE OF ASSISTANCE TO YOU.
YOUR NEXT QUESTION INVOLVES VIOLATIONS OF CONFLICTS OF INTEREST WHILE IN A MUNICIPAL OFFICE. THE STATUTORY PROVISION WHICH ADDRESSES THIS ISSUE IS 11 O.S. 8-113, WHICH STATES IN PERTINENT PART:
 ". . . NO MUNICIPAL OFFICER OR EMPLOYEE, OR ANY BUSINESS IN WHICH SAID OFFICER, EMPLOYEE, OR SPOUSE OF THE OFFICER OR EMPLOYEE HAS A PROPRIETARY INTEREST, SHALL ENGAGE IN:
 1. SELLING, BUYING, OR LEASING PROPERTY, REAL OR PERSONAL, TO OR FROM THE MUNICIPALITY; OR
2. CONTRACTING WITH THE MUNICIPALITY; OR . . ."
FURTHERMORE, A "PROPRIETARY INTEREST" AS DEFINED IN THAT SECTION IS AN OWNERSHIP OF MORE THAN TWENTY-FIVE PERCENT (25) OF THE BUSINESS OR OF THE STOCK THEREIN OR ANY PERCENTAGE WHICH CONSTITUTES A CONTROLLING INTEREST BUT SHALL NOT INCLUDE ANY SUCH INTEREST HELD BY A BLIND TRUST. ALSO, ANY PERSON CONVICTED OF VIOLATING THIS STATUTE SHALL BE GUILTY OF A MISDEMEANOR.
IN ATTORNEY GENERAL OPINION NO. 83-249, IT WAS ASKED WHETHER IT WAS A CONFLICT OF INTEREST FOR A MEMBER OF A MUNICIPAL PLANNING COMMISSION TO OWN THE NEWSPAPER USED BY THE COMMISSION TO PUBLISH ITS LEGAL. AFTER CONCLUDING THAT A MEMBER OF THE PLANNING COMMISSION WAS A PUBLIC OFFICER, THE AUTHOR OF THE OPINION DETERMINED THAT PURSUANT TO 21 O.S. 344, WHICH IS VIRTUALLY IDENTICAL TO 11 O.S. 8-113 BUT IS NOT APPLICABLE TO THOSE INDIVIDUALS COVERED UNDER 8-113, IT IS A CONFLICT OF INTEREST FOR A MEMBER OF A MUNICIPAL PLANNING COMMISSION TO OWN THE NEWSPAPER USED BY THE COMMISSION TO PUBLISH ITS LEGALS.
ATTORNEY GENERAL OPINION NO. 83-152, ADDRESSED WHETHER IT WAS A CONFLICT OF INTEREST FOR A CITY COUNCILMAN TO ALSO BE MANAGER OF THE CABLE TELEVISION COMPANY THAT SERVICES THE CITY. THE OPINION REVIEWED 62 O.S. 371, AND PRIOR ATTORNEY GENERAL OPINIONS. ATTORNEY GENERAL OPINION NO. 77-155 WAS USED AS AUTHORITY WHEREIN THE OPINION FOUND A CONFLICT FOR AN INSURANCE AGENCY MANAGER WHOSE AGENCY CARRIED INSURANCE FOR THE TOWN TO BE ELECTED TO CITY COUNCIL AND DETERMINED THAT THE CITY COULD NOT ENTER OR RENEW THE CONTRACT OF INSURANCE. THIS CONFLICT OF INTEREST EXISTED EVEN THOUGH THE CITY COUNCILMAN DID NOT TAKE PART IN VOTING FOR THE CONTRACT. REFERENCING THE UNITED STATES SUPREME COURT OPINION IN UNITED STATES V. MISSISSIPPI,364 U.S. 520, 81 S.CT.294, 5 L.ED.2D 268 (1961), THE OPINION CITED THE FOLLOWING LANGUAGE:
 "THE STATUTE IS THUS DIRECTED NOT ONLY AT DISHONOR, BUT ALSO AT CONDUCT THAT TEMPTS DISHONOR . . . TO THIS EXTENT, THEREFORE, THE STATUTE IS MORE CONCERNED WITH WHAT MIGHT HAVE HAPPENED IN A GIVEN SITUATION THAN WITH WHAT ACTUALLY HAPPENED. IT ATTEMPTS TO PREVENT HONEST GOVERNMENT AGENTS FROM SUCCUMBING TO TEMPTATION BY MAKING IT ILLEGAL FOR THEM TO ENTER INTO RELATIONSHIPS WHICH ARE FRAUGHT WITH TEMPTATION."
IN CONCLUSION, THE OPINION STATED THAT IT WAS A CONFLICT TO ENTER INTO A CONTRACT OR RENEW A CONTRACT DURING THE TIME THE COUNCILMAN SERVED ON YOUR LAST QUESTION ASKS WHETHER THE OLD TOWN BOARD OF TRUSTEES OR THE NEW BOARD SHOULD MAKE AN APPOINTMENT WHEN THERE IS A VACANCY WHICH OCCURS AFTER THE ELECTION OF THE NEW BOARD BUT BEFORE THE NEW BOARD OFFICIALLY TAKES ITS OFFICE. THE GOVERNING STATUTE IS 11 O.S. 8-109 WHICH STATES IN PERTINENT PART: "WHEN A VACANCY OCCURS IN AN OFFICE OF AN ELECTED MUNICIPAL OFFICIAL EXCEPT THE MAYOR, THE GOVERNING BODY SHALL APPOINT, BY A MAJORITY VOTE OF THE REMAINING MEMBERS, A PERSON TO FILL THE VACANCY UNTIL THE NEXT GENERAL MUNICIPAL ELECTION, OR THE NEXT BIENNIAL TOWN MEETING IF THE MUNICIPALITY IS SUBJECT TO THE OKLAHOMA TOWN MEETING ACT. . . ."
OKLAHOMA LAW HAS CONTINUALLY HELD THAT WITHOUT ADDITIONAL GUIDANCE FROM THE LEGISLATURE, TO DETERMINE WHAT IS MEANT BY CERTAIN WORDS IN A STATUTE SUCH AS GOVERNING BODY IN THIS INSTANCE, WE MUST INTERPRET THIS LANGUAGE IN ITS COMMON AND ORDINARY SENSE. 25 O.S. 1 (1981). THE GOVERNING BODY AT THE TIME THAT VACANCY AROSE, ACCORDING TO THE FACTS GIVEN, WAS THE OLD BOARD AS THE NEW BOARD HAD NOT TAKEN OFFICE. TO FIND OTHERWISE WOULD RESULT IN BOTH BOARDS ACTING AT THE SAME TIME. THEREFORE, FOLLOWING THE LANGUAGE IN 11 O.S. 8-109, THE GOVERNING BODY WOULD THE BOARD THAT WAS IN OFFICE AT THE TIME OF THE RESIGNATION AND THE NEED FOR THE APPOINTMENT OF A REPLACEMENT FOR THE RESIGNING MEMBER. THE COUNCIL.
(DIANE L. SLAYTON)