Attorney General Edmondson has asked me to respond to your request for an Attorney General's opinion regarding whether a home rule charter municipality may lawfully expend public funds to provide assistance to indigent residents of the municipality. Because your question may be answered by reference to controlling statutes, case law and Attorney General's Opinions, this office has determined your request should be answered through this informal letter.
The discussion which follows is not an official opinion of the Attorney General. Rather, the following analysis and conclusions, while solely my own, have been reached after careful research of the question raised.
In your letter you asked, in effect, the following question:
 May a home rule charter municipality lawfully expend public funds to provide food, clothing, financial assistance and other welfare services to indigent residents of the municipality?
A charter municipality is defined in 11 O.S. 1-102 (1991) as:
 "any municipality which has adopted a charter in accordance with the provision of the Constitution and laws of Oklahoma and at the time of adoption of the charter had a population of two thousand (2,000) or more. Once a municipal charter has been adopted and approved, it becomes the organic law of the municipality in all matters pertaining to the local government of the municipality and prevails over state law on matters relating to purely municipal concerns(.)"
The express statutory grants of authority and power to municipalities are found at 11 O.S. 22-101 which states in part that:
 "All incorporated municipalities shall be bodies corporate and politic, and shall have the power to . . . (m)ake all contracts and do all other acts in relation to the property and affairs of the municipality, necessary to the good government of the municipality, and to the exercise of its corporate and administrative powers(.)"
(Emphasis added.)
Attorney General Opinion No. 77-228 answers the question of whether a city (mayor-city council government) may lawfully expend funds for the purpose of providing hot meals to elderly and handicapped individuals in order to prevent malnutrition. Although Article X, Section 17 of the Oklahoma Constitution prohibits a city from making direct appropriations to a private corporation, A.G. Opin. No. 77-228 states that acquiring services through a private entity to provide meals to the elderly and handicapped to prevent malnutrition is within the city's authority to promote the health of its inhabitants. The opinion cited 11 O.S. 642. Section 11 O.S. 642 stated that the mayor and council shall have the power to enact ordinances to protect the "health of the inhabitants." The Attorney General reasoned that acquiring such services would not be a donation or gift to a private organization because providing meals to elderly and handicapped persons to prevent malnutrition was a proper public purpose.
While your question is similar to the one asked in A.G. Opin. No. 77-228, two main fact differences exist. First, 11 O.S. 642 is no longer a part of the municipal code. Second, the question in A.G. Opin. No. 77-228 discussed the issue through the powers set forth for the statutory mayor-city council type of municipality.
Charter Municipalities are described in 11 O.S. 13-101 et seq. This form of government is not a statutorily created form, but rather its origin is found in Article XVIII, Section 3(a) of the Oklahoma Constitution. Section 3(a) states in part:
 "Any city containing a population of more than two thousand inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this State . . . Upon such approval it shall become the organic law of such city and supersede any existing charter and all amendments thereof and all ordinances inconsistent with it."
A number of cases interpret Article XVIII, Section 3(a) of the Oklahoma Constitution regarding the power of a home-rule charter municipality. Such power is broad as set forth in Moore v. City of Tulsa, 561 P.2d 961, 963 which states:
 "A city which adopts a home-rule charter under the provisions of Okla. Const. Article XVIII, Section 3(a) is accorded full power of local self-government, and as such the city has the power to enact and enforce ordinances to protect the public peace, order, health, morals and safety of its inhabitants even though general statutes exist relating to the same subjects."
Incorporated municipalities operating under proper charter provisions could be empowered to expend public funds to provide welfare services to indigent residents of the municipality. Certainly providing for the welfare of the municipality's citizens goes to the charge of protecting "public peace, order, health, morals and safety of its inhabitants." Furthermore, 56 Am.Jur.2nd Municipal Corporations, 439, at pages 488 and 489 states that:
 "(M)unicipal corporations may enact all appropriate ordinances . . . for the protection and preservation of the public health and to control whatever constitutes a menace thereto . . . It is a well-settled maxim that "the health of the people is the first law(.)"
It appears that the expenditure of municipal funds to provide for the welfare of the municipality's indigent residents is encompassed in the municipality's authority to do all acts that are "necessary to the good government of the municipality" and to "protect the public peace, order, health, morals and safety of its inhabitants." Whether a city's charter authorizes such expenditures is a question of fact which would have to be resolved on a charter-by-charter basis.
It is, therefore, the opinion of the undersigned attorney that a home rule charter municipality may lawfully expend public funds to provide food, clothing, financial assistance and other welfare to indigent residents of the municipality provided the incorporated municipality charter grants the city power to provide the welfare of the citizens.
(L. Michelle Stephens)