# W. MUN REDDELL v. STATE.

No. A-2638. Opinion Filed January 26, 1918.

(170 Pac. 273.)

1. **OFFICERS—Warrants Against Public Funds—Anti-Nepotism Statute—"Such Ineligible Person."** A person related within the third degree by affinity to a member of the school district board, for whom a warrant was drawn by said board for the payment out of the public funds of such school district of compensation earned by said person for doing odd jobs of draying for said school district, is not "such ineligible person," to whom it shall be unlawful for such board to draw a warrant against said public funds, as provided in section 2236, Rev. Laws 1910.

2. **SAME.** "Such ineligible person," mentioned in section 2236, supra, refers back to a person appointed as provided in section 2235.

3. **SAME—"Appointment"—"Employment."** The word "appointment" is ordinarily used in connection with the designation of a person to an office or other similar but subordinate employment, and the term "employment" is often used to distinguish an office from a position of a subordinate degree, such as a clerkship or servant, in continuous service of the employee. Said terms are used in this connection in the foregoing statutes.

4. **SAME—Sufficiency of Evidence.** Evidence examined, and **held** not sufficient to sustain a conviction for illegally drawing a public school district warrant in violation of section 2236, supra.

*Appeal from County Court, Okmulgee County;*
*Mark L. Bozarth, Judge.*

W. Mun Reddell was convicted of unlawfully issuing public school district warrants, and he appeals. Judgment reversed; case dismissed.

*M. M. Alexander,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

MATSON, J. The plaintiff in error was convicted in the county court of Okmulgee county of unlawfully issu-

ing, as a member of the school district board of school district No. 2 in that county, a warrant against said district to his son-in-law, J. W. Rayburn, for $24, in payment for labor performed by said Rayburn for said school district under an employment theretofore given him by said school district board. There is no dispute as to the facts. The defendant took the witness stand in his own behalf, and admitted that the said J. W. Rayburn was his son-in-law, and that he as a member of said board drew a warrant against said school district in favor of the said Rayburn for the sum of $24, as alleged in the information and for the purpose as heretofore set forth.

This is a prosecution under the anti-nepotism statute of the Legislature of 1907 and 1908, and is the first time this court has been called upon to construe same. The prosecution was based upon section 2236, Rev. Laws 1910, which provides as follows:

"It shall be unlawful for any executive, legislative, ministerial or judicial officer mentioned in the preceding section, to draw or authorize the drawing of any warrant or authority for the payment out of any public fund, of the salary, wages, pay or compensation of any such ineligible person, and it shall be unlawful for any executive, legislative, ministerial or judicial officer to pay out of any public funds in his custody or under his control the salary, wages, pay or compensation of any such ineligible person."

Counsel for plaintiff in error contends that the facts of this case do not cover the crime defined by said statute. In order to give a proper construction to the aforesaid section, it is necessary to consider same in connection with the section immediately preceding it, section 2235, which provides:

"It shall be unlawful for any executive, legislative, ministerial or judicial officer to appoint or vote for the appointment of any person related to him by affinity or consanguinity within the third degree, to any clerkship, office, position, employment or duty in any department of the state, district, county, city or municipal government of which such executive, legislative, ministerial or judicial officer is a member, when the salary, wages, pay or compensation of such appointee is to be paid out of the public funds or fees of such office."

This court is required, in construing the general statutes of the state, to give them a liberal construction, such as will promote the objects for which they were enacted and in furtherance of justice; but, as has been repeatedly held by this court, it is for the Legislature to declare what shall constitute a crime—the duty of the courts is to determine whether a particular act done or omitted is within the intention of the statute. *State v. Lawrence,* 9. Okla. Cr. 16, 130. Pac. 508.

The question naturally arises: What was the intent and purpose of the foregoing statutes? It is within the knowledge of the members of this court that, prior to the adoption of anti-nepotism statutes in this country, a practice had arisen wherein it was the custom of elected officials to appoint their relatives to subordinate positions and employments in their department of state and municipal government. It was this practice that led undoubtedly to the adoption of such statutes, and this is the practice we think it was clearly intended to abolish.

The question then is: What is meant by the expression in section 2236, *supra,* "any such ineligible person"? Does that mean just any person related by affinity or consanguinity within the third degree to the officer

or board or commission, where such officer or board appoints said person to any office or employment within his department of government; or is the term broad enough to include a person related within such prohibited degree although he is only employed to perform a particular piece of work, to do a particular job as it were, for the department of the state, district, county, etc., of which the employer is a member? In our opinion to give this statute the broad construction last referred to would read into its terms something not intended to be covered by the Legislature. If the Legislature intended to cover an act such as this for which plaintiff in error was convicted, it certainly would have used a broader term in section 2235 than that used, to wit, "to appoint or vote for the appointment," and again, "such appointee." Section 2235 clearly indicates it was the intention of the Legislature to prevent the filling of subordinate offices, positions, employments, or duties of trust which are of a continuous nature, either provided by law or necessarily required to carry out the duties imposed by law on any such department. When the term "such ineligible person" was incorporated in section 2236, the Legislature, as we view the statute, necessarily referred back to that person unlawfully "appointed" under the provisions of section 2235. In other words, the Legislature intended to prevent the filling of offices and subordinate employments by relatives of the person making the appointment within the third degree. That was the practice that had grown to be disreputable prior to the enactment of the statute.

We are not unmindful of the fact that the word "employment" is a term of broad significance, and when used in respect to a servant or a hired hand is equivalent to the word "hiring"; but we cannot conscientiously give

it that broad meaning under the terms of this statute. This statute requires an appointment to be made, and the word "appointment" is ordinarily used in connection with the designation of a person to an office or some similar but subordinate employment, and the term "employment" has often been used to distinguish an office from a position of a subordinate degree, such as a clerkship or servant, in continuous service of the employee. This is the connection in which we think it was used in this statute. Clearly under the facts of this case there was no "appointment to any clerkship, office, position, employment or duty of trust" appertaining or relating to the school district against which this warrant was issued, and employment such as here proven is not the kind of employment contemplated or covered by the statute, and which it was intended by the Legislature to prohibit. An appointment such as janitor for the school building would have come within the terms of the statute, a teacher of the school likewise, and other employments of that nature, where a party is designated or appointed to perform some service which is clearly connected with the duties of said school district board, and is of a continuous nature or for a fixed term. The evidence here shows that this son-in-law of the plaintiff in error was employed to do this particular work as the occasion arose therefor. These were odd jobs, not usually arising from the ordinary duties of the school district board, for which a person would be employed by appointment.

We recognize that there could arise a pernicious practice, wherein persons related to officers or boards could be constantly employed to perform temporary services, to the exclusion of persons not so related; but, if the Legislature intended to cover such a practice by the enactment, or

desired so to do, the language of the act should, and undoubtedly would, have been made more definite and clear. Such the Legislature may easily remedy by broadening the wording of the statute. This court cannot read such a meaning into this statute as it now stands.

For the reasons above given, the judgment of conviction is reversed, with directions to the trial court to dismiss the prosecution.

DOYLE, P. J., and ARMSTRONG, J., concur.