MERIT SYSTEM — NEPOTISM The January 10, 1963 and January 28, 1963 Attorneys General opinions exempting employees of the Merit System of Personnel Administration from the nepotism prohibitions of 21 O.S. 484 [21-484] (1971), are currently valid. The Attorney General is in receipt of your request for an opinion wherein you furnish the following information: "My attention has been directed toward a possible violation of the State's nepotism laws, 21 O.S. 481 [21-481] — 21 O.S. 487 [21-487] (1971), in the Department of Public Safety. The present Commissioner assumed office on May 1, 1971. His son-in-law, who became a trooper three years prior to marriage to the daughter of the Commissioner, was employed in the Department on April 1, 1962. The Commissioner's son was employed in the Department on April 25, 1971. Both relatives were employed under Merit System procedures prior to the assumption of office by the Commissioner. "I am aware that certain opinions dated January 10, 1963, and January 28, 1963, are among the last to interpret the Oklahoma law. In an opinion dated January 10, 1963, to Senator Robert Breeden, Attorney General Mac Q. Williamson held that the continued employment of the brother-in-law of Governor Henry Bellmon, who had been employed by the State Highway Department since 1943, and who was under the Merit System Act of Personnel Administration, was not subject to the provisions of 21 O.S. 484 [21-484]. That hence, said brother-in-law could legally continue in his position in the State Highway Department. The subsequent opinion by Attorney General Charles Nesbitt, dated January 28, 1963, directed to Secretary of State James M. Bullard, held that it was not necessary for the brother of said Secretary of State to resign his job as appraiser for the State School Land Commission, and that he could lawfully continue in said position. The opinion dated January 28, 1963, specifically affirmed the opinion dated January 10, 1963." You then ask the question: "Will you please issue an opinion as to whether the above mentioned opinions dated January 10, 1963, and January 28, 1963, are currently valid?" The nepotism prohibitions, first enacted in 1907, are found in 21 O.S. 481-487 [21-481-487], which provide: Section 21 O.S. 481 [21-481]: "It shall be unlawful for any executive, legislative, ministerial or judicial officer to appoint or vote for the appointment of any person related to him by affinity or consanguinity within the third degree, to any clerkship, office, position, employment or duty in any department of the State, district, county, city or municipal government of which such executive, legislative, ministerial or judicial officer is a member, when the salary, wages, pay or compensation of such appointee is to be paid out of the public funds or fees of such office. Provided, however, that for the purposes of this chapter, a divorce of husband and wife shall terminate all relationship by affinity that existed by reason of the marriage, regardless of whether the marriage has resulted in issue who are still living." Section 21 O.S. 482 [21-482]: "It shall be unlawful for any such executive, legislative, ministerial or judicial officer mentioned in the preceding section, to draw or authorize the drawing of any warrant or authority for the payment out of any public fund, of the salary, wages, pay or compensation of any such ineligible person, and it shall be unlawful for any executive, legislative, ministerial or judicial officer to pay out of any public funds in his custody or under his control the salary, wages, pay or compensation of any such ineligible person. Section 21 O.S. 483 [21-483]: "It shall be unlawful for any executive, legislative, ministerial, or judicial officer to appoint and furnish employment for any person whose services are to be rendered under his direction and control and paid for out of the public funds, and who is related by either blood or marriage within the third degree to any other executive, legislative, ministerial or judicial officer when such appointment is made in part consideration that such other officer shall appoint and furnish employment to any one so related to the officer making such appointment." Section 21 O.S. 484 [21-484]: "Any person related within the third degree by affinity or consanguinity to any member of either the legislative, judicial or executive branch of the State Government shall not be eligible to hold any clerkship, office, position, employment or duty in such branch of the State Government." Section 21 O.S. 485 [21-485]: "Any executive, legislative, ministerial or judicial officer who shall violate any provision of this Article, shall be deemed guilty of a misdemeanor involving official misconduct, and shall be punished by a fine of not less than one hundred or more than one thousand dollars, and shall forfeit his office." Section 21 O.S. 486 [21-486]: "Every person guilty of violating the provisions of this Article, shall, independently of, or in addition to any criminal prosecution that may be instituted, be removed from office according to the mode of trial and removal prescribed in the constitution and laws of this State." Section 21 O.S. 487 [21-487]: "Under the designation executive, legislative, ministerial or judicial officer as mentioned herein are included the Governor, Lieutenant Governor, Speaker of the House of Representatives, Corporation Commissioners, all the heads of the departments of the State Government, judges of all the courts of this State, mayors, clerks, councilmen, trustees, commissioners and other officers of all incorporated cities and towns, public school trustees, officers and boards of managers of the State University and its several branches, State Normals, the penitentiaries and eleemosynary institutions, members of the Commissioners Court, and all other officials of the State, district, county, cities or other municipal subdivisions of the State." The earliest serious study of the Oklahoma nepotism law was in the 1918 case of Reddell v. State, 14 Okl. Cr. 199, 170 P. 273. In Reddell, the Court determined that the son-in-law of a school board member could be hired to perform odd jobs without violating the nepotism laws. The Oklahoma Court in examining the nepotism statutes stated: "The question naturally arises: What was the intent and purpose of the foregoing statutes? It is within the knowledge of the members of this court that, prior to the adoption of anti nepotism statutes in this country, a practice had arisen wherein it was the custom of elected officials to appoint their relatives to subordinate positions and employments in their department of state and municipal government. It was this practice that led undoubtedly to the adoption of such statutes, and this is the practice we think it was clearly intended to abolish." On January 10, 1963, in construing the 1907 nepotism laws, and specifically Section 484, Attorney General Mac Q. Williamson issued his opinion holding that the brother-in-law of Governor Henry Bellmon could continue his position with the State Highway Department after Governor Bellmon took office. The Attorney General held that Section 484 had to be considered in connection with later laws relating to the Merit System of Personnel Administration because the relative in question was subject to the Merit System laws. The Attorney General concluded: "Such laws provide, generally, for tenure of employees in the classified service, and apparently it was the intention of the Legislature that the status of such employees would be changed only as authorized or provided by those laws; and it does not appear that a loss of status occurs thereunder merely because a relative of an employee who has acquired status later becomes a member of the same branch of State Government. Other reasons for discharge are specified by 74 O.S. 833 [74-833] (1961): "Presumably the above quoted provisions were not violated when the brother-in-law was first appointed to his position, or when he acquired his present status in the classified service; and it is not believed that assumption of the office of Governor by his relative will make him ineligible to continue in his position." On January 28, 1963, Attorney General Charles Nesbitt issued his opinion to James M. Bullard, Secretary of State, affirming the principle of law in the January 10, 1963 opinion. In that opinion the Attorney General held that, after Mr. Bullard had taken office, his brother could continue his position as appraiser for the State School Land Commission, on which Commission Mr. Bullard served. There has been no change in this principle of law, or its interpretation, by the Oklahoma Legislature, the Courts or the office of the Attorney General since 1963. Section 74 O.S. 833 [74-833] of Title 74 of the Oklahoma Statutes provides for the dismissal, suspension, or demotion of Merit System employees for the following reasons: ". . . for misconduct, insubordination, inefficiency, habitual drunkenness, inability to perform the duties of the position in which employed, wilful violation of this act or of the rules prescribed by the State Personnel Board, conduct unbecoming a public employee, conviction of a crime involving moral turpitude, or any other just cause, . . ." It is important to note that the reasons set out by the Legislature for dismissal of a Merit System employee contemplate an affirmative action by the employee to effect his dismissal. However, 21 O.S. 484 [21-484] (1971) of the nepotism law, contemplates dismissal as the result of circumstances beyond the control of the employee, e.g., attaining of office by a relative within the third degree of consanguinity (blood) or affinity (marriage). While the nepotism statutes seek to prevent the practice of elected officials appointing their relatives to subordinate positions in their department of state and local government (Reddell v. State, supra), the Merit System of Personnel Administration was enacted for the purpose of allowing state employees to be employed and to work in an environment where their success or failure is due to their own merit, and not from outside influence, political or otherwise. In excluding the operation of Section 21 O.S. 484 [21-484] of the nepotism statutes as to employees in the Merit System, Attorneys General Williamson and Nesbitt held that the status of such employees could be changed only as authorized or provided by Merit System law. In determining whether the two 1963 Attorneys General opinions referred to are currently valid we must examine the subsequent history of legislative action. During the intervening years since the two 1963 opinions were issued, the Legislature has amended the Merit System laws, in 1963, 1965, 1967, 1968, 1969, 1970, 1971, and 1972, every time they have met. None of these changes altered the effect of the 1963 opinions and the effect of legislative inaction as applied to those opinions must now be determined. There are long-standing rules of statutory construction which must be considered. The effect of the silence of a Legislature, having met many times after the issuance of an Attorney General's opinion interpreting a statute, was set forth in the case of Goble v. Mazie Dependent School District, Okl.,485 P.2d 156. In that case the Attorneys General had issued several opinions relating to the annexation of independent and dependent school districts and the appointment of members to a new board of the combined district. In its ruling the Court stated: "It is apparent from the opinion of the Attorney General and the reliance thereon by the State Board of Education and the county school superintendents that for many years the statutory annexation provisions have been interpreted to require, in an instance such as involved herein, the creation of a new board of education, the majority of whose members are appointed by the Governor. During this long period of time, the Legislature has convened many times and has not modified the construction. In such event, silence by the Legislature may be regarded as acquiescence or approval of the interpretation placed upon the provisions by the Attorney General." The reasoning of the Goble case, supra, parallels that of the case of Peterson v. Oklahoma Tax Commission, Okl., 395 P.2d 388, wherein the Supreme Court stated: "In construing the above statutory provisions we should be mindful of certain rules of law, which are: (1) The long continued construction of a statute by a department of government charged with its execution is entitled to great weight and should not be overturned without cogent reasons; and where the legislature has convened many times during this period of administrative construction without expressing its disapproval, such silence may be regarded as acquiescence in or approval of the administrative construction . . ." An indication of the Legislature's intent with regard to the application of the nepotism laws to Merit System employees is found in 74 O.S. 1971 837 [74-837], of the Merit System statutes which provides: "No person shall be employed by the State Personnel Board who is related by affinity or consanguinity within the third degree to any member of the said Board." This law was passed by the Legislature in 1961, some time after Governor J. Howard Edmondson by executive order issued on January 6, 1960, placed the State Personnel Board's employees under the Merit System. If the Legislature had intended the nepotism prohibitions of 21 O.S. 484 [21-484] (1971) to apply to Merit System employees, there would have been no reason for the Legislature to enact this 1961 law, which otherwise would have duplicated the prohibition in Section 484. Such a duplication would make Section 837 meaningless and would be contrary to the presumption that the Legislature does not do a vain and useless act. (See Moral Insurance Company v. Cooksey, 285 P.2d 222 (1955). It is apparent from the Legislature's inaction following the 1963 opinions and their own enactment of 21 O.S. 1971 837 [21-837], that the Oklahoma Legislature approves of the Attorneys General interpretations of 21 O.S. 484 [21-484] (1971), and that it is their intent that said prohibitions not apply to employees under the Merit System. It is, therefore, the opinion of the Attorney General that your question be answered in the affirmative. The January 10, 1963 and January 28, 1963 Attorneys General opinions exempting employees of the Merit System of Personnel Administration from the nepotism prohibitions of 21 O.S. 484 [21-484] (1971), are currently valid. (Mike D. Martin) ** SEE: OPINION NO. 75-155 (1975) **