Dear Superintendent Fisher,
The Attorney General is in receipt of your request for an opinion where you ask, in effect, the following question:
 1. Can an individual, whose wife is a tenured school teacher, serve on the school board?
 2. Would it create a direct conflict of interest under recently enacted bargaining laws?
 3. Can a teacher sit in on negotiations as a member of the teacher's negotiating team, when the teacher's spouse participates as a member of the Board's team?
In order to address the first question, it is necessary to look to 21 O.S. 481 and 21 O.S. 482 (1971) respectively. 21 O.S. 481 provides in pertinent part:
 "It shall be unlawful for an executive, legislative, ministerial or judicial officer to appoint or vote for the appointment of any person related to him by affinity or consanguinity within the third degree, to any clerkship, office, position, employment or duty in any department of the State, district, county, city or municipal government of which such executive, legislative, ministerial or judicial officer is a member, when the salary wages, pay or compensation of such appointee is to be paid out of the public funds or fees of such office."
21 O.S. 482 provides:
 "It shall be unlawful for any such executive, legislative, ministerial or judicial officer mentioned in the preceding section, to draw or authorize the drawing of any warrant or authority for the payment out of any public fund, of the salary, wages, pay or compensation of any such ineligible person, and it shall be unlawful for any executive, legislative, ministerial or judicial officer to pay out of any public funds in his custody or under his control the salary, wages, pay, or compensation of any such ineligible person."
A prior Attorney General's Opinion No. 75-155, has answered the first question affirmatively, stating that the nepotism statute does not prevent a person related to a teacher, within the third degree of consanguinity, from being elected to, and serving on the school board. There is nothing under Oklahoma law which prohibits a person otherwise qualified from running for a position on a school board. The impact of the nepotism statute would not be on the school board member, but rather on the teacher who is related to that member. The question which arises relates to the status of the tenured teacher after the spouse is elected to the school board, and a new contract for the teacher is negotiated.
In Opinion No. 75-155, in order to arrive at the affirmative finding, great significance was placed on Title 70 O.S. 6-122 (1974) which provides:
 "The failure by the Board of Education to renew the contract of any teacher who has completed three (3) years shall not be effective, and the contract shall be renewed unless the board causes to be served on the teacher a written statement of the causes for such action, which must include one of the following: immorality, wilful neglect of duty, cruelty, incompetency, teaching disloyalty to the American Constitutional system of government, or any reason involving moral turpitude. . . ."
This statute was interpreted to mean that unless a tenured teacher was given notice of the board's intent to terminate the contract, all contracts would automatically be renewed. This, in turn, was interpreted to mean that once a teacher was tenured, the school board no longer took any affirmative action on that contract.
As long as the teacher is serving under the precise contract, last negotiated for the tenured teacher prior to the spouse's election to the school board, there is no conflict with the nepotism laws. However, this contract is necessarily for a specific term, the school year. At the end of the term the contract is renewed, by operation of law, unless written notice is given pursuant to the provisions of 70 O.S. 6-122. In any case, a different contract, if in no other regard simply because the teacher is employed for an additional year, has been entered into. This presents a violation of the nepotism statutes.
The nepotism laws seek to prevent situations where a person in public office, can appoint a relative to a subordinate position and thereafter exercise control over that position. The nepotism laws seek to avoid this situation so as to prevent the opportunity from arising for self-dealing and self-benefit.
The construction of the nepotism statutes and the intent of the Legislature, were dealt with in Reddell v. State, 14 Okla. Cr. 199, 170 P.273 (1918), wherein the Court said:
 ". . . The question naturally arises: What was the intent and purpose of the foregoing statutes? It is within the knowledge of the members of this Court that, prior to the adoption of anti-nepotism statutes in this country a practice had arisen wherein it was the custom of elected officials to appoint their relatives to subordinate positions and employments in their department of state and municipal government. It was this practice that led undoubtedly to the adoption of such statutes, and this is the practice we think it was clearly intended to abolish. . . ."
The Court went on to say that the nepotism statutes did not prevent a school board member from issuing a warrant to a part-time employee where such person was related to the member of the board. However, the Court said:
 "An appointment such as janitor for the school building would have come within the terms of the statute, a teacher of the school likewise, and other employments of that nature, where a party is designated or appointed to perform some service which is clearly connected with the duties of said school district board, and is of a continuous nature or for a fixed term."
 It is, therefore, the opinion of this office that as long as thetenured teacher continues to serve under the contract which was in effectprior to the spouse's election to the school board, there is no conflictunder the nepotism statutes. However, at the time when the tenuredspouse-teacher's contract is to be renewed, such renewal constitutes a newappointment and would, therefore, be prohibited by the nepotism statute.
Insofar as Attorney General Opinion No. 75-155 conflicts with the abovereasoning, it is withdrawn. In light of the foregoing rationale in regardto your first question, it is unnecessary to address questions two andthree.
JAN ERIC CARTWRIGHT, ATTORNEY GENERAL OF OKLAHOMA
JOHN PERCIVAL, ASSISTANT ATTORNEY GENERAL