Dear Senate Stipe,
¶ 0 The Attorney General has received your request for an official opinion asking, in effect:
Under the terms of 21 O.S. 481 (1981), in the event that aperson is elected to be a county commissioner, must all relativeswho are within the third degree of consanguinity or affinity tothat person and who are at that time current employees of thecounty resign their positions or employments?
¶ 1 Title 21 O.S. 481 (1981) sets forth Oklahoma's criminal provisions generally regulating nepotism practices in governmental entities in the state. 21 O.S. 481 provides:
 It shall be unlawful for any executive, legislative, ministerial or judicial officer to appoint or vote for the appointment of any person related to him by affinity or consanguinity within the third degree, to any clerkship, office, position, employment or duty in any department of the state, district, county, city or municipal government of which such executive, legislative, ministerial or judicial officer is a member, when the salary, wages, pay or compensation of such appointee is to be paid out of the public funds or fees of such office. Provided, however, that for the purposes of this chapter, a divorce of husband and wife shall terminate all relationship by affinity that existed by reason of the marriage, regardless of whether the marriage has resulted in issue who are still living.
¶ 2 This law has been in existence in the Oklahoma statutes in some form since statehood in 1907. See, Okla. Sess. Laws 1907-08, c. 60, p. 573. It has a sister statute, 21 O.S. 482,
which makes it a crime to vote for the payment of a person appointed in violation of 21 O.S. 481. A conviction under 21O.S. 482 necessarily contemplates that an illegal appointment was made in the first place under 21 O.S. 481.
¶ 3 The seminal appellate decision construing section 481 isReddell v. State, 170 P. 273 (Okla.Crim.App. 1918). InReddell, a member of the governing board of a school district was convicted of unlawfully causing the issuance of a district warrant to his son-in-law in payment for services that the relative had performed for the district by doing "odd jobs" at irregular intervals. On appeal, the Oklahoma Court of Criminal Appeals reversed the conviction, declaring that the terms of the law required an "appointment" to be made by the officer being charged with criminal misconduct, and that the occasional and irregular performance of services in question did not constitute such an "appointment." Id. at 274.
¶ 4 In posing the question as to what the intent was behind the adoption of the law, the Court stated:
 The question naturally arises: What was the intent and purpose of the foregoing statutes? It is within the knowledge of the members of this court that, prior to the adoption of anti-nepotism statutes in this country, a practice had arisen wherein it was the custom of elected officials to appoint their relatives to subordinate positions and employments in their department of state and municipal government. It was this practice that led undoubtedly to the adoption of such statutes, and this is the practice we think it was clearly intended to abolish.
Id.
¶ 5 The Court went on to state:
 Section 2235 clearly indicates it was the intention of the Legislature to prevent the filling of subordinate offices, positions, employments, or duties of trust which are of a continuous nature, either provided by law or necessarily required to carry out the duties imposed by law on any such department . . . In other words, the Legislature intended to prevent the filling of offices and subordinate employments by relatives of the person making the appointment within the third degree. That was the practice that had grown to be disreputable prior to the enactment of the statute.
Id.
¶ 6 The Court further stated:
 This statute required an appointment to be made, and the word" appointment" is ordinarily used in connection with the designation of a person to an office or some similar but subordinate employment, and the term" employment" has often been used to distinguish an office from a position of a subordinate degree, such as a clerkship or servant, in continuous service of the employee.
Id.
¶ 7 On February 13, 1959, the Attorney General responded to questions from Carroll J. Bowie, County Attorney for Garvin County, regarding the language of the 1953 version of Section 481. Specifically posed was whether this law forbade the appointment of a relative in the third degree to a paid position if the relative would agree to refuse to accept any payment for his services. In responding, the Attorney General advised:
 That the public policy behind said section was to require such a public officer to appoint or vote for the appointment of the best qualified person obtainable to such a subordinate office or position who would be willing to serve for the compensation provided by law for said office or position, and not to permit him to be influenced by the fact that the person to be appointed (who by virtue of his appointment may be granted important discretionary authority affecting the public) is a close relative who is financially able to serve without being compensated from public funds.
(Emphasis in original).
¶ 8 This Opinion closely followed the logic of Reddell and pronounced that the purpose of the law was to prevent public officials from placing their close relatives in positions in governmental service, so as to ensure that the public's interests are served best through employment hiring practices free from the potential biases inherent in close familial situations. In Attorney General Opinion No. 72-202, however, the Attorney General expanded this traditional view of the statute by advising that relatives within the third degree of a newly-elected public officer who are then employed in a "continuous" or "month-to-month" basis by the public body that the new officer has been elected to serve must immediately terminate those relationships. The Attorney General advised:
 Where a person is elected a member of a Governing Body within the State of Oklahoma, at which time the elected official has relatives then employed by said Governing Body on a month to month or continuous basis, who are related to him by affinity or consanguinity within the third degree, then under the provisions of 21 O.S. 481 through 21 O.S. 487
(1971), the Governing Body must terminate the employment of said employees when the elected official takes office; provided, however, that those employees employed by contract prior to the election of the relative to the Governing Body may continue their employment for the contractual period.
¶ 9 In essence, the Attorney General advised at that time that "month-to-month" or "continuous" employment relationships between public bodies and their employees are such that the continued approval of the governing body of the monthly payroll for such persons is the legal equivalent to the governing body reappointing those employees every month. Therefore, the act of a member of a governing board making payment approvals would also be illegal.
¶ 10 This approach to the statute is incorrect. Section 481 is a criminal provision. Criminal statutes are to be interpreted strictly against the State and liberally in favor of an accused, and words not found in the text of a criminal statute will not be read into it for the purpose of extending it or giving it an interpretation in conformity with some supposed public policy.State v. Humphrey, 620 P.2d 408 (Okla.Crim.App. 1980). Attorney General Opinion No. 72-202's embellishments upon the criminal elements set forth in the statute itself are in error, and that Opinion is withdrawn.
¶ 11 It is generally held that the Legislature has the ability to fashion particularized rules for this type of problem. See,generally, 11 A.L.R. 4th 826, "Validity, Construction, and Effect of State Constitutional or Statutory Provision Regarding Nepotism in the Public Service." Case law from foreign jurisdictions have ruled both ways as to the question you ask.Id. In this instance, the intent of 21 O.S. 481, as the Court held in 1918, is to prohibit a public official from making or voting for the initial appointment of a relative within the third degree to a position of compensated public employment. While not uniform on the point, judicial decisions that have been reached in other jurisdictions bolster this rationale. See, State exrel. Stephens v. Fletchall, 412 S.W. 2d 423 (Mo. 1967); NewMexico State Bd. of Education v. Board of Education,624 P.2d 530 (N.M. 1981); Hinek v. Bowman Public School District,232 N.W.2d 72 (N.D. 1975).
¶ 12 However, it should also be noted that the statute, while not intended to address situations involving the continued employment of a public employee already on the public payroll in their then current position, would prohibit such employees from ever being considered for raises, lateral transfers, or promotions while the relative in question is in office and technically a part of the process that would have to be engaged in to approve such promotions, transfers or pay increases. Such a change in job responsibilities or compensation would constitute a new appointment.
¶ 13 It is, therefore, the official opinion of the AttorneyGeneral that under the terms of 21 O.S. 481 (1981), in the eventthat a person is elected to the post of county commissioner,persons who are relatives in the third degree of consanguinity oraffinity to that officer, and who are then already countyemployees serving on a "continuous" or "month-to-month" basis,are not required to resign their positions or employments merelybecause of such election. Attorney General Opinion No. 72-202 iswithdrawn.
ROBERT H. HENRY Attorney General of Oklahoma
MICHAEL SCOTT FERN Assistant Attorney General