RE: APPLICATION OF 21 O.S. 481 — 21 O.S. 487/11 O.S. 8-106 (1987)
IN GOING THROUGH OLD FILES, THIS OFFICE HAS FOUND THAT YOUR LETTER REQUEST REGARDING WHETHER THE TERMS OF 11 O.S. 8-106 AND 21 O.S. 481 — 21 O.S. 482 APPLY TO SITUATIONS WHERE AN OFFICER OF A STATUTORY MUNICIPALITY APPOINTS OR VOTES FOR THE APPOINTMENT OF HIS SON TO A NON-SALARIED POSITION IN THE MUNICIPAL GOVERNMENT WAS APPARENTLY NEVER FORMALLY RESPONDED TO. SPECIFICALLY, YOU ASKED AS TO THE CONTINUING VITALITY OF THE OPINION EXPRESSED IN ATTORNEY GENERAL OPINION NO. 83-176 THAT THE TERMS OF THE PROVISIONS IN SECTION 8-106 APPLY TO OFFICERS WHO ARE NOT COMPENSATED BY THE STATE. PLEASE ACCEPT MY APOLOGY ON BEHALF OF THE ATTORNEY GENERAL. I HOPE THAT THE FOLLOWING INFORMATION IS OF SOME USE TO YOU.
SINCE 1908, OKLAHOMA HAS HAD A SET OF LAWS ON THE STATUTE BOOKS GENERALLY PROHIBITING CERTAIN TYPES OF NEPOTISM RELATIONSHIPS IN PUBLIC EMPLOYMENT. THOSE LAWS, LARGELY UNCHANGED SINCE THEIR INITIAL ADOPTION, ARE CURRENTLY CODIFIED AT 21 O.S. 481 21 O.S. 487. IN ADDITION TO THESE GENERAL STATUTES, OF COURSE, THERE ARE NUMEROUS EXAMPLES OF SPECIFIC PROHIBITIONS THAT PARALLEL OR EXPAND UPON THE NEPOTISM LAWS IN CERTAIN AREAS. TITLE 11 O.S. 8-106 (1987) IS SUCH A STATUTE. SECTION 481 STATES, IN THIS REGARD:
 "IT SHALL BE UNLAWFUL FOR ANY EXECUTIVE, LEGISLATIVE, MINISTERIAL OR JUDICIAL OFFICER TO APPOINT OR VOTE FOR THE APPOINTMENT OF ANY PERSON RELATED TO HIM BY AFFINITY OR CONSANGUINITY WITHIN THE THIRD DEGREE, TO ANY CLERKSHIP, OFFICE, POSITION, EMPLOYMENT OR DUTY IN ANY DEPARTMENT OF THE STATE, DISTRICT, COUNTY, CITY OR MUNICIPAL GOVERNMENT OF WHICH SUCH EXECUTIVE, LEGISLATIVE, MINISTERIAL OR JUDICIAL OFFICER IS A MEMBER, WHEN THE SALARY WAGES PAID OR COMPENSATION OF SUCH APPOINTEE IS TO BE PAID OUT OF THE PUBLIC FUNDS OR FEES OF SUCH OFFICE. PROVIDED, HOWEVER, THAT FOR THE PURPOSES OF THIS CHAPTER, A DIVORCE OF HUSBAND AND WIFE SHALL TERMINATE ALL RELATIONSHIP BY AFFINITY THAT EXISTED BY REASON OF THE MARRIAGE, REGARDLESS OF WHETHER THE MARRIAGE HAS RESULTED IN ISSUE WHO ARE STILL LIVING."
SECTION 482 ADDS:
 "IT SHALL BE UNLAWFUL FOR ANY SUCH EXECUTIVE, LEGISLATIVE, MINISTERIAL OR JUDICIAL OFFICER MENTIONED IN THE PRECEDING SECTION, TO DRAW OR AUTHORIZE THE DRAWING OF ANY WARRANT OR AUTHORITY FOR THE PAYMENT OUT OF ANY PUBLIC FUND, OF THE SALARY, WAGES, PAY OR COMPENSATION OF ANY SUCH INELIGIBLE PERSON, AND IT SHALL BE UNLAWFUL FOR ANY EXECUTIVE, LEGISLATIVE, MINISTERIAL OR JUDICIAL OFFICER TO PAY OUT OF ANY PUBLIC FUNDS IN HIS CUSTODY OR UNDER HIS CONTROL THE SALARY, WAGES, PAY OR COMPENSATION OF ANY SUCH INELIGIBLE PERSON."
THERE HAS BEEN ONLY ONE REPORTED CASE IN OKLAHOMA JURISPRUDENCE DIRECTLY INTERPRETING THESE STATUTES IN A MANNER RELEVANT TO YOUR INQUIRY, REDDELL V. STATE,170 P. 273 (OKLA. CRIM. APP. 1918). IN THAT CASE, THE COURT OF CRIMINAL APPEALS RULED THAT THESE TWO SECTIONS HAD TO BE READ IN CONJUNCTION WITH ONE ANOTHER, AND THAT THEY DID NOT SPEAK TO SITUATIONS WHERE THE ONLY ALLEGED FORBIDDEN EMPLOYMENT RELATIONSHIP INVOLVED A PART-TIME, SPORADICLY USED EMPLOYEE WHO WAS NOT "APPOINTED" TO HIS POST BY A RELATIVE.
IN SO HOLDING, THE COURT ALSO REVIEWED THE PRECEPTS UPON WHICH THIS SCHEME WAS BASED, STATING:
 "IT IS WITHIN THE KNOWLEDGE OF THE MEMBERS OF THIS COURT THAT, PRIOR TO THE ADOPTION OF ANTI-NEPOTISM STATUTES IN THIS COUNTRY, A PRACTICE HAD ARISEN WHEREIN IT WAS THE CUSTOM OF ELECTED OFFICIALS TO APPOINT THEIR RELATIVES TO SUBORDINATE POSITIONS AND EMPLOYMENTS IN THEIR DEPARTMENT OF STATE AND MUNICIPAL GOVERNMENT. IT WAS THIS PRACTICE THAT LED UNDOUBTEDLY TO THE ADOPTION OF SUCH STATUTES, AND THIS IS THE PRACTICE IT WAS CLEARLY INTENDED TO ABOLISH."
ID, AT 274.
THE COURT FURTHER ADDED:
 "SECTION 2235 CLEARLY INDICATES IT WAS THE INTENTION OF THE LEGISLATURE TO PREVENT THE FILLING OF SUBORDINATE OFFICES, POSITIONS, EMPLOYMENTS, OR DUTIES OF TRUST WHICH ARE OF A CONTINUOUS NATURE, EITHER PROVIDED BY LAW OR NECESSARILY REQUIRED TO CARRY OUT THE DUTIES IMPOSED BY LAW ON ANY SUCH DEPARTMENT . . . IN OTHER WORDS, THE LEGISLATURE INTENDED TO PREVENT THE FILLING OF OFFICES AND SUBORDINATE EMPLOYMENTS BY RELATIVES OF THE PERSON MAKING THE APPOINTMENT WITHIN THE THIRD DEGREE. THAT WAS THE PRACTICE THAT HAD GROWN TO BE DISREPUTABLE PRIOR TO THE ENACTMENT OF THE STATUTE."
ID.
IN REVIEWING THESE STATUTES, THE ATTORNEY GENERAL ADVISED, IN AN OFFICIAL OPINION DATED FEBRUARY 13, 1959, AND ADDRESSED TO THE HONORABLE CARROLL BOWIE, THAT THE TERMS OF THESE LAWS EVEN ADDRESSED SITUATIONS WHERE THE EMPLOYEE IN QUESTION WOULD NOT RECEIVE ANY OF THE COMPENSATION PROVIDED FOR BY LAW. AN OPINION ISSUED ON NOVEMBER 1, 1967 TO RALPH C. HAYNES, DISTRICT ATTORNEY, ADVISED THAT THESE LAWS CAME INTO PLAY WHERE A CITY COUNCILMAN APPOINTS HIS SON TO A POST OF VOLUNTEER FIREMAN, BUT THAT OPINION RECITES THAT SOME FORM OF COMPENSATION WOULD BE PAID TO THE FIREFIGHTER. THE 1959 OPINION WAS FURTHER NOTED IN ATTORNEY GENERAL OPINION NO. 71-402, WHEREIN THE ATTORNEY GENERAL ADVISED THAT THE TERMS OF 21 O.S. 481 AND 21 O.S. 482 (NEPOTISM) WERE BROAD ENOUGH TO COVER MONIES COMING INTO THE HANDS OF A POLITICAL SUBDIVISION THAT WERE ORIGINALLY OBTAINED THROUGH A FEDERAL GRANT.
IN 1983, AS INDICATED IN YOUR LETTER, THE ATTORNEY GENERAL AGAIN REVIEWED THE TERMS OF THESE STATUTES, ALONG WITH THOSE OF A PRIOR VERSION OF SECTION 11 O.S. 8-106, AND STATED, IN PASSING, THAT THE TERMS OF SECTIONS 481 AND 482, ABOVE, ONLY APPLIED TO INSTANCES WHERE THERE WAS SOME COMPENSATION PASSING TO THE INDIVIDUAL IN QUESTION. HOWEVER, THE OPINION THEN WENT ON TO REVIEW THE TERMS OF SECTION 8-106, AND ADVISED THAT THIS STATUTE WAS NOT JUST INTENDED TO SPEAK TO COMPENSATED POSITIONS, BUT ALSO TO ANY MUNICIPAL OFFICE, WHETHER THE OFFICE WAS A COMPENSATED POSITION OR NOT. YOU INQUIRE AS TO THE CONTINUING VALIDITY OF THIS OPINION, IN LIGHT OF THE RECENT AMENDMENTS TO SECTION 8-106. THAT SECTION CURRENTLY READS:
 "NO ELECTED OR APPOINTED OFFICIAL OR OTHER AUTHORITY OF THE MUNICIPAL GOVERNMENT SHALL APPOINT OR ELECT ANY PERSON RELATED BY AFFINITY OR CONSANGUINITY WITHIN THE THIRD DEGREE TO ANY GOVERNING BODY MEMBER OR TO HIMSELF OR, IN THE CASE OF A PLURAL AUTHORITY, TO ANY ONE OF ITS MEMBERS TO ANY OFFICE OR POSITION OF PROFIT IN THE MUNICIPAL GOVERNMENT. THE PROVISIONS OF THIS SECTION SHALL NOT PROHIBIT AN OFFICER OR EMPLOYEE ALREADY IN THE SERVICE OF THE MUNICIPALITY FROM CONTINUING IN SUCH SERVICE OR FROM PROMOTION THEREIN. A PERSON MAY HOLD MORE THAN ONE OFFICE OR POSITION IN A MUNICIPAL GOVERNMENT AS THE GOVERNING BODY MAY ORDAIN. A MEMBER OF THE GOVERNING BODY SHALL NOT RECEIVE COMPENSATION FOR SERVICE IN ANY MUNICIPAL OFFICE OR POSITION OTHER THAN HIS ELECTED OFFICE."
INITIALLY, LET ME NOTE THAT THE AMENDMENTS TO THIS SECTION REALLY DO NOT COME INTO PLAY IN RESPONDING TO YOUR INQUIRY. SINCE 1977, SECTION 8-106 HAS PROVIDED THAT A PERSON, UNDER CERTAIN CIRCUMSTANCES, AND IF NO OTHER STATE LAW PROHIBITS SAME, MAY HOLD MORE THAN ONE POSITION OR OFFICE IN THE MUNICIPAL GOVERNMENT. THE NEW AMENDMENTS SINCE 1983 MERELY ALTER THIS AUTHORIZATION TO ONE WHERE SUCH DUAL POSITION HOLDING IS SPECIFICALLY CONTEMPLATED TO BE LAWFUL, AND ADD THAT IF A MEMBER OF THE GOVERNING BOARD OF SUCH A MUNICIPALITY HOLDS ANY OTHER MUNICIPAL POSITION OR OFFICE, HE MAY ONLY RECEIVE COMPENSATION FOR HIS ELECTED POST. THIS CHANGE HAS NO IMPACT UPON YOUR INQUIRY, AS SAME INVOLVES THE APPOINTMENT BY A MUNICIPAL OFFICER OF ANOTHER PERSON TO AN OFFICE OF THE CITY. NOTE TOO, THAT IT IS PRESUMED FROM YOUR LETTER THAT THE APPOINTMENT IN QUESTION WOULD BE THE INITIAL APPOINTMENT FOR THE PERSON IN QUESTION, AND THAT NO ISSUE OF PREEXISTING EMPLOYMENT OF THE PERSON IS IMPLICATED. SUCH A FACT PATTERN COULD SUBSTANTIALLY ALTER THE COMMENTS MADE HERE.
YOUR QUESTION, AS I UNDERSTAND IT, ASKS IF THE TREATMENT OF SECTION 8-106 IS CORRECT, IN THE SENSE THAT MOST OF THE TERMS OF THE CRIMINAL CODE RELATIVE TO NEPOTISM DEAL WITH APPOINTMENTS MADE TO COMPENSATED POSITIONS. THE BRIEF SUBMITTED BY THE RESEARCH STAFF RECOGNIZES THIS DUALITY OF TREATMENT AND PONDERS WHETHER SUCH WAS THE LEGISLATURE'S INTENT.
THE PRIOR OPINION OF THE ATTORNEY GENERAL THAT ADVISED THAT THE TERMS OF SECTION 8-106 OF TITLE 11 ARE BROADER THAN THOSE OF SECTIONS 481 AND 482 OF THE CRIMINAL CODE APPEARS TO STILL BE AN ACCURATE RELATION OF THAT LAW. SUCH A DISPARITY IS NOT UNHEARD OF. FOR EXAMPLE, THE TERMS OF 70 O.S. 5-113 PROHIBIT ANY PERSON RELATED WITHIN THE THIRD DEGREE TO ANY MEMBER OF ANY LOCAL BOARD OF EDUCATION IN THE STATE FROM BEING APPOINTED OR ELECTED TO SERVE ON THE SAME BOARD OF EDUCATION. SUCH POSITIONS, WHICH ARE CLEARLY PUBLIC OFFICES, ARE NONSALARIED, SAVE FOR THE EXCEPTION WHICH PERMITS A BOARD MEMBER TO ALSO SERVE AS A COMPENSATED CLERK FOR THE BOARD. SEE, 70 O.S. 5-113/70 O.S. 5-118/70 O.S. 5-119.
IN SUMMARY, WHILE IT IS RECOGNIZED THAT THE LIMITS UPON MUNICIPAL OFFICERS UNDER 11 O.S. 8-106 (1987) ARE BROADER IN SCOPE THAN THOSE GENERALLY PROVIDED FOR IN THE CRIMINAL CODE AT 21 O.S. 481, ET SEQ., SUCH A DIFFERENCE IN TREATMENT IS NOT UNHEARD OF, AND THE STATEMENTS OF ATTORNEY GENERAL OPINION NO. 83-176 ARE STILL THE POSITION OF THE ATTORNEY GENERAL RELATIVE TO THIS AREA OF CONCERN.
(MICHAEL SCOTT FERN)