Dear Senator Bass:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 May the district manager of a master conservancy district contract with his or her spouse for employment with the district that is not a part of the normal duties of the district, is limited in duration, and cannot be accomplished by existing district employees?
Your question requires an analysis of Oklahoma's nepotism laws, 21 O.S. 2001, §§ 481[21-481] — 487, and whether those laws apply to the officers and employees of master conservancy districts. We will begin our analysis by examining the purpose and nature of the nepotism laws.
 THE STATE'S NEPOTISM LAWS
Oklahoma's nepotism laws were enacted to abolish the practice of public officials appointing their relatives to positions within the officials' departments of government. Reddell v. State, 170 P. 273, 274
(Okla. 1918). Title 21, Section 481 of the State's nepotism laws provides in pertinent part as follows:
 A. It shall be unlawful for any executive, legislative, ministerial or judicial officer to appoint or vote for the appointment of any person related to him by affinity or consanguinity within the third degree, to any clerkship, office, position, employment or duty in any department of the state, district, county, city or municipal government of which such executive, legislative, ministerial or judicial officer is a member, when the salary, wages, pay or compensation of such appointee is to be paid out of the public funds or fees of such office.
Id. (emphasis added).
The class of persons subject to the nepotism laws is broad. Title 21, Section 487 defines "any executive, legislative, ministerial or judicial officer" as follows:
 Under the designation executive, legislative, ministerial or judicial officer as mentioned herein are included the Governor, Lieutenant Governor, Speaker of the House of Representatives, Corporation Commissioners, all the heads of the departments of the state government, judges of all the courts of this State, mayors, clerks, councilmen, trustees, commissioners and other officers of all incorporated cities and towns, public school trustees, officers and boards of managers of the state university and its several branches, state normals, the penitentiaries and eleemosynary institutions, members of the commissioners court, and all other officials of the
State, district, county, cities or other municipal subdivisions of the state.
Id. (emphasis added). Thus, "officials" of "districts" are considered "executive, legislative, ministerial or judicial officers" who are subject to the State's nepotism laws.
Our next inquiry is two-fold: whether master conservancy districts are included in the term "district" used in 21 O.S. 2001, § 481[21-481], and if so, whether the district manager of a master conservancy district is an "official" of the district as defined in 21 O.S. 2001, § 487[21-487]. To answer these questions, we will first examine the nature of master conservancy districts.
 MASTER CONSERVANCY DISTRICTS
By statute, master conservancy districts may be formed for any or all of the following purposes: preventing floods, reclaiming wet and overflowed land, providing irrigation, and "providing water for domestic, industrial and agricultural requirements." 82 O.S. 2001, § 541[82-541](B). Two or more municipal corporations and/or conservancy districts may pool their resources to accomplish the foregoing purposes by creating a master conservancy district. Id. § 541(C)(4). The Legislature has declared that master conservancy districts "shall not be political corporations or subdivisions of the state," id. § 541(A), but rather are "bod[ies] corporate with all the powers of a corporation," id. § 545. Nonetheless, such districts have been given governmental broad powers, including both the taxing power of the State and the power of eminent domain. Id.
The question is whether a master conservancy district is a "district" whose officials are subject to the nepotism laws. 21 O.S. 2001, §§ 481[21-481], 487. Although this office has never considered whether master conservancy districts come within the ambit of the nepotism statutes, previous Attorney General Opinions have concluded that those laws apply to other kinds of districts and their officers. For example, A.G. Opin. 79-19 found that the nepotism laws apply to officers of rural water, sewer, gas and solid waste management districts. Id. at 25. By statute, such districts are "bod[ies] politic and corporate and. . . agenc[ies] and legally constituted authorit[ies] of the State of Oklahoma for the public purposes set forth" in the laws authorizing their creation. 82 O.S. 2001, § 1324.6[82-1324.6](6).
In contrast to rural water, sewer, gas, and solid waste management districts, master conservancy districts are not "political corporations or subdivisions of the state." 82 O.S. 2001, § 541[82-541](A). Nevertheless, we do not believe that a district's status, or lack thereof, as a body politic or subdivision of the State is the determining factor in analyzing whether it is subject to the nepotism laws. If the Legislature in writing the nepotism laws had intended that only districts that are political corporations or subdivisions of the State were covered, it could have expressly said so. Alternatively, it could have eliminated the word "district" altogether from the list of affected entities, because districts that are designated by statute as bodies politic or subdivisions of the State would automatically be included under the rubric of "any department of the state, district, county, city or municipal government." 21 O.S. 2001, § 481[21-481].
That the Legislature expressly included the term "district" without any qualification as to type is evidence that it intended all districts created by statute or Constitution, of whatever kind, to be covered by the nepotism laws. For example, in A.G. Opin. 84-149, this office concluded that although emergency medical service districts were not a part of State, county, or municipal government, the nepotism laws applied to them. "[I]t is clear from reading the State's nepotism laws. . . that the broad inclusive language contained therein was meant to encompass virtually all public entities or bodies, including an Emergency Medical Service District. . . . [W]hen the Legislature. . . specifically used the term District, in addition to reference to state departments, counties or municipal governmental entities," it intended to include entities such as Emergency Medical Service Districts.Id. at 277. By this reasoning, based on the broad language of Section 481 master conservancy districts are also subject to the nepotism laws.
Having concluded that master conservancy districts are entities whose officials are subject to the nepotism laws, our analysis turns to whether the district manager of a master conservancy district is an official of the district.
As was previously noted, Title 21, Section 481 makes it unlawful for any executive, legislative, ministerial or judicial officer to:
 [A]ppoint or vote for the appointment of any person related to him by affinity or consanguinity within the third degree, to any clerkship, office, position, employment or duty in any. . . district. . . of which such executive, legislative, ministerial or judicial officer is a member, when the salary, wages, pay or compensation of such appointee is to be paid out of the public funds or fees of such office.
Id.
Title 21, Section 482 specifies further that it is unlawful for such an officer to pay compensation to a relative within the prohibited degree out of any public funds the officer controls.
 It shall be unlawful for any such executive, legislative, ministerial or judicial officer mentioned in the preceding section, to draw or authorize the drawing of any warrant or authority for the payment out of any public fund, of the salary, wages, pay or compensation of any such ineligible person, and it shall be unlawful for any executive, legislative, ministerial or judicial officer to pay out of any public funds in his custody or under his control the salary, wages, pay or compensation of any such ineligible person.
Id. Thus, with very limited exceptions,[1] any officer who either appoints or votes to appoint a relative within the prohibited degree, or who pays such a relative with public funds under his or her control, violates the nepotism laws.
A master conservancy district is run by a board of directors. 82 O.S. 2001, §§ 541[82-541](D)(1). Among its many statutory powers, the board of directors is "authorized and empowered to appoint a manager and such additional personnel as may be necessary and proper for conducting the business of said district" as well as to "employ and discharge a chief engineer. . . an attorney. . . and such other engineers, attorneys and other agents and assistants as may be useful and necessary[.]" Id. §§ 541(D)(7), 564. It is this power to either appoint someone to an "office, position, employment or duty," or the authority to pay "salary, wages, pay or compensation" to him or her, that makes an "executive, legislative, ministerial or judicial officer" subject to the nepotism laws. 21 O.S. 2001, §§ 481[21-481], 482. Therefore, each member of the board of directors of a master conservancy district is an officer subject to the nepotism laws by virtue of the powers to appoint employees and authorize payment to them.
Material submitted with your Opinion request gives no indication that the person the district contemplates hiring, the district manager's spouse, is related to any director within the prohibited degree. Therefore, if the board of directors were to appoint the district manager's spouse to an "office, position, employment or duty" with the master conservancy district, the appointment would not violate the nepotism laws. However, the material you provided indicates that the district manager, who is an employee of the district rather than a director, has the authority to hire the district's employees. Letter from M. Monty Hightower, Esq., to Jack Jackson, President, Waurika Lake Master Conservancy District, p. 5 (Feb. 16, 2007). If the board of directors has the authority to delegate its statutory power to hire employees to the district manager, then the manager will be subject to the nepotism laws.
 PERMISSIBLE DELEGATION OF AUTHORITY
The common law principle regarding delegation of authority is delegatapotestas non potest delegari, which has been interpreted as, "one to whom authority stands delegated may not, without specific empowerment, redelegate it to another." Sullins v. Amer. Med. Response of Okla., Inc.,23 P.3d 259, 267 n. 13 (Okla. 2001) (Opala, J., concurring) (citingBushert v. Hughes, 912 P.2d 334, 339 (Okla. 1996)). This principle does not absolutely prohibit delegation of all functions, but allows or forbids delegation based on the nature of any particular function. Along with courts in other jurisdictions, the Oklahoma Supreme Court has recognized that discretionary functions cannot be delegated, but administrative or ministerial functions may.
 Administrative bodies and officers cannot. . . delegate authority and functions which under the law may be exercised only by them; and, although they may delegate merely ministerial functions, in the absence of statute or organic act permitting it, they cannot delegate powers and functions discretionary or quasi-judicial in character, or which require the exercise of judgment.
Van Horn Oil Co. v. Okla. Corp. Comm'n, 753 P.2d 1359, 1363 (Okla. 1988) (emphasis added) (quoting Anderson v. Grand River Dam Auth., 446 P.2d 814,818 (Okla. 1968)) (finding that although the Corporation Commission could delegate the power to hear evidence on matters before it to a hearing officer, only the Commission itself had authority to render an order concluding the matter). See also Ledbetter v. Okla. Alcoholic BeverageLaws Enforcement Comm'n, 764 P.2d 172, 182-83 nn. 25, 27 (Okla. 1988) (suggesting that the ABLE Commission could not by rule lawfully delegate to its director the power to revoke or suspend a license or impose a civil fine on a licensee, without the full Commission reviewing the director's action and issuing its own order); Anderson, 446 P.2d at 818
(deciding a GRDA rule was an unlawful delegation of authority when it required that an applicant for an anchorage permit obtain written consent from the abutting landowner before the permit would be granted, because such discretion could only be exercised lawfully by the GRDA and not redelegated to the landowner).
The distinction between discretionary and ministerial functions is not always clear. "Where the law prescribes and defines an official's duty with such precision and certainty as to leave nothing to the exercise of discretion or judgment," that duty is ministerial. 63C AM.JUR.2DPublic Officers Employees § 234 (Westlaw). Similarly, "a ministerial act has been defined as one which a person performs on a given statement of facts, and in a prescribed manner, in obedience to the mandate of legal authority, without regard to, or the exercise of, his or her own judgment upon the propriety of acts being done." Id. In contrast, discretionary functions "are such as necessarily require the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued. . . . [A] discretionary duty involves judgment, planning, or policy decisions."Id.
There is no consensus among courts on whether the authority to hire and pay employees is a discretionary or ministerial function. In one case, a court held that whether the power to hire and fire employees could be delegated depended on the type of position the employee held. FremontRe-1 Sch. Dist. v. Jacobs, 737 P.2d 816 (Colo. 1987). In Jacobs, the court found that firing a bus driver was an administrative function that the school board could delegate to the superintendent, as that position was "collateral to the school board's educational mission" (id. at 819); however, the delegation was valid only if it was "accompanied by specific standards which left little or nothing to the discretion or judgment" of the superintendent. Id. at 817. In contrast, the court found that the power to hire and fire teachers, who "directly affect the educational mission of the school district," was nondelegable. Id. at 820. A different court, however, did not distinguish between employees' positions but unequivocally said the power to hire and fire employees could not be delegated. Sitton v. Gibbs, 392 N.E.2d 244, 247
(Ill.App.Ct. 1979) (holding that "matters pertaining to hiring and firing school personnel are discretionary functions and therefore cannot be delegated" from the school board to the school district superintendent).
We have found no guidance in case law from Oklahoma courts on whether, as a general principle, hiring employees is discretionary or ministerial. In the absence of controlling common law authority in Oklahoma and the lack of consensus among courts on the discretionary or ministerial character of hiring employees, we conclude that for an entity to lawfully delegate its hiring authority, the Legislature must have expressly authorized such delegation in the statutes governing that entity. Van Horn Oil Co., 753 P.2d at1363.
In examining the Oklahoma Statutes we find that some entities have been given express statutory authority to delegate the hiring and firing of employees, while others have not. See, e.g., 82 O.S. Supp.2006, § 1461(I)(1) (providing that a Scenic Rivers Commission may "[a]ppoint and fix the salary of an administrator. . . who shall serve at the pleasure of the Commission. . . . The administrator may select, appoint, and employindividuals to fill personnel positions authorized, budgeted, and deemednecessary by the Commission") (emphasis added); 74 O.S. Supp.2006, § 5060.7(B) (providing that the board of directors of the Oklahoma Center for the Advancement of Science and Technology may appoint an executive director who "[m]ay employ and terminate such other officers andemployees as designated by the Board") (emphasis added). But see OKLA. CONST. art. X, § 9C(a) (stating that the board of trustees of an emergency medical service district has the power to "hire a manager and appropriate personnel" with no express authority to delegate hiring power to the manager or anyone else); 82 O.S. 2001, § 1324.10[82-1324.10](A)(6) (providing that the board of directors of a rural water, sewer, gas or solid waste management district has the power to "[a]ppoint officers, agents and employees, to prescribe their duties and fix their compensation" with no mention of authority to delegate such power).
Regarding the subject of your question, master conservancy districts, the relevant statutes contain no provision expressly authorizing the district's board of directors to delegate the authority to hire employees.
Rather, the statutes provide only that the board of directors is "authorized and empowered to appoint a manager and such additional personnel as may be necessary and proper for conducting the business of said district" as well as to "employ and discharge a chief engineer. . . an attorney. . . and such other engineers, attorneys and other agents and assistants as may be useful and necessary[.]" 82 O.S. 2001, §§ 541[82-541](D)(7), 564. We conclude that in the absence of express statutory authority to do so, the board of directors of a master conservancy district may not delegate its power to hire employees to the district manager or anyone else. This conclusion renders your question moot.
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. The members of the board of directors of a master conservancy district created under 82 O.S. 2001 Supp.2006, §§ 531 — 688.1, are officers subject to the State's nepotism laws, 21 O.S. 2001, §§ 481[21-481] — 487, and may not appoint a relative within the third degree of consanguinity or affinity to any office, position, employment or duty in their district.
 2. The statutes governing master conservancy districts do not authorize the district's board of directors to delegate the authority to hire employees to its district manager. 82 O.S. 2001, §§ 541[82-541](D)(7), 564. Therefore, we need not address whether the State's nepotism laws would be violated if the district manager hired his or her spouse to work for the district, because the manager has no authority to hire anyone.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
DEBRA SCHWARTZ ASSISTANT ATTORNEY GENERAL
[1] The Oklahoma Supreme Court created an exception to application of the nepotism laws in Reddell. According to Reddell, the prohibition on employing relatives does not apply to "odd jobs, not usually arising from the ordinary duties" of the employing entity when the work is not "of a continuous nature or for a fixed term." Id. 170 P. at 274. Your question implies that the employment contemplated by the master conservancy district for the district manager's spouse is such an "odd job."